No. B061360. Second Dist., Div. Six. June 17, 1992.]

In re the Marriage of PAUL and KATHLEEN McGINNIS.
PAUL McGINNIS, Appellant, v.
KATHLEEN McGINNIS, Respondent.

## Counsel

Diane M. Matsinger and Paul A. Capritto for Appellant.

Heather Georgakis and Leslie Sinclair Nixon for Respondent.

## Opinion

**YEGAN, J.**—In family law parlance, this is a "move away" case. Paul McGinnis (father) appeals from the August 27, 1991 order changing custody and allowing Kathleen McGinnis (mother) to take their three children from Santa Barbara and move to Arcadia where mother's new husband obtained employment. We reverse, allow father the opportunity to obtain a psychological evaluation, and remand for a new hearing consistent with the rules we announce herein.

Father and mother were married in January 1983 and separated in 1988. They are the parents of three children: Justin, born June 9, 1983; Heather, born November 20, 1985; and Joshua, born March 28, 1987. Prior to the order here challenged, the children continuously resided in Santa Barbara.

On September 19, 1990, father and mother entered into a stipulated judgment of dissolution providing for joint legal custody of the children. Mother concedes that while the judgment is silent as to physical custody, it, in essence, provides for joint physical custody. The judgment specified that father was awarded visitation from 4:30 p.m. every Thursday until 4:30 p.m. on every Sunday. It is undisputed that this shared parenting arrangement was working.[1] The family residence was ordered sold. Mother wanted to purchase it but did not have the financial ability to do so. Father, who did have

---

[1]This working arrangement was consistent with the legislative goal of assuring ". . . minor children of frequent and continuing contact with both parents after the parents have separated

the financial ability, purchased it in May of 1991 so the children could remain in the home that they had known since their births.

Father, a California Highway Patrol Officer, became engaged and subsequently married a fellow officer. Mother, who worked part-time as a waitress intermittently during the marriage, remarried Tom Melvin, a football coach for the University of California at Santa Barbara. When the university disbanded its football program, Mr. Melvin sought and obtained employment as a football coach in the Arcadia area.

As might be expected, mother wanted to move to Arcadia with Mr. Melvin and take the three children. On August 1, 1991, mother sent father the following letter, which in pertinent part, provides: "This letter is to inform you that as of August 24, 1991, Tom and I will no longer be residing in Santa Barbara. I will pick up the children from you on Sunday, August 25, 1991 at the usual time . . . . On Thursday, August 29, 1991, you can pick them up at our home in Arcadia . . . . The reason for the move is that Tom is now working in Los Angeles. . . ."[2]

In response to this letter, on August 14, 1991, father filed a motion to prevent mother from changing the children's residence to Arcadia. Mother filed her responsive papers on August 19, 1991.

At the August 23, 1991 hearing the matter was argued and submitted on declarations and without any live-witness testimony. Father expressly asked the court to enter an order maintaining the status quo until an independent evaluation could be done. Counsel for husband complained about the sudden move and argued that ". . . cases of this nature deserve a lot of consideration. And it may involve more information be placed before the Court, that provides the Court with other than their representations. [¶] It seems to me they're on equal footing . . . . [¶] I think it would be the evidence of the independent person to take a look and see what they may evaluate as in the best interests of the children."

The trial court erroneously denied the request and said, "I'll hear whatever arguments have to be made, but I can't see why we've got to get into the time and expense of some sort of an evaluation or analysis." The trial court

---

or dissolved their marriage, and to encourage parents to share the rights and responsibilities of child rearing . . . ." (Civ. Code, § 4600, subd. (a).)

[2]From mother's perspective, this was the only reasonable alternative. However, from father's perspective, changing the childrens' residence was the antithesis of being reasonable. In light of the working shared parenting arrangement and his recent purchase of the family home to provide for continuity for the children, the August 1, 1991 message must have been emotionally devastating.

emphasized that school was about to start, an order had to be made, ". . . and I don't think you need an evaluation in this case." The trial court also said that ". . . either parent would be a good parent. . . . . I think it's one of those cases in which, probably, you won't make too big a mistake regardless of what you did."[3]

On August 27, 1991, the trial court entered an order, which in pertinent part provides: "The parties shall continue to have joint legal custody of the minor children. Physical custody of the children is awarded to respondent [mother], so that she may move with the children and her present husband to Arcadia. The Court finds that this will be in the best interests of the children. [¶] The Court finds that both parents are easily able to provide a good environment for the children and to rear them properly. This has been a close decision. In making its decision, and given the ages of the children, the Court is placing great weight upon respondent's representation that she does not plan to obtain employment outside the home."

On September 20, 1991, the trial court denied father's request for a stay. Father then filed a notice of appeal and petitioned this court for supersedeas relief. In a two-to-one decision, we denied relief. We now view the propriety of the August 27, 1991 order as of the time it was made. Contrary to mother's argument we may not consider the trial court's comments at the September 20, 1991 stay hearing, i.e., that she was the primary caretaker, as a factual finding supporting the August 27, 1991 order.

 A custody decision allowing a parent to remove the children out of the county is bound to interfere with the remaining parent's ability to have frequent and continuing contact with his or her children. (See Civ. Code, § 4600, subd. (a).) It is one of the most serious decisions a family law court is required to make. It should not be made in haste. The best interests of the children require that competing claims be considered in a calm, dispassionate manner and only after the parties have had an opportunity to be meaningfully heard.

 We recently rearticulated the well-settled rule that the trial court has discretion to permit or exclude live-witness testimony in deciding postjudgment family law motions and orders to show cause. (*In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412 [6 Cal.Rptr.2d 791].) While the rule is a good one, any doubt should be resolved in favor of live-witness

---

[3]The trial court correctly saw the need for an immediate ruling. The court should have made an interim order maintaining the status quo. The worst thing that would have happened is that the children would have stayed with their father and attended the same schools until an outside evaluation was procured. Had the trial court made such an interim ruling, perhaps mother would have stayed in Santa Barbara while her new husband commuted to work.

testimony where the issue is a potential "move away." Here, however, father had no live-witness testimony to offer because he was not ready in light of the limited time frame he had to respond. This exigency was attributable to mother.

Effective January 1, 1989, a noncustodial parent is, to the extent feasible, entitled to 45 days' notice where the custodial parent indicates that he or she plans to change the children's residence. (Civ. Code, § 4600.5, subd. (m).) This period affords the parties time to marshall evidence and allows ". . . time for mediation of a new agreement concerning custody." (Civ. Code, § 4600.5 subd. (m).) In the instant case, mother advised father that she was leaving with the children on August 1, 1991, and obtained an order to do so on August 27, 1991. Although the parties stipulated to an order shortening time for the hearing, the "move away" issue was not mediated upon adequate notice or a sufficient amount of time to adequately prepare. At oral argument, counsel for mother indicated that the mediation held on August 12, 1991, dealt with this issue. The Superior Court file shows that a mediation was held. It could not, however, have meaningfully addressed the "move away" issue. Father's moving papers were not even filed until August 14, 1991. The Superior Court file shows that the August 12, 1991 mediation was initially directed to a minor dispute concerning which swim program was appropriate for 8-year-old Justin.

Mediation is mandatory in a "move away" case. (Civ. Code, § 4607.) While we are not now called upon to decide what is in the childrens' long-term best interests, it seems obvious that an appropriate interim solution would have been for the children to remain in Santa Barbara pending a meaningful hearing where father could have had a professional evaluator offer his or her declaration or perhaps give live-witness testimony. The haste in which this custody decision was made does not inspire confidence.

 "In deciding between competing parental claims to custody, the court must make an award 'according to the best interests of the child' . . . . This test, established by statute, governs all custody proceedings. [Citation.]" (*Burchard* v. *Garay* (1986) 42 Cal.3d 531, 535 [724 P.2d 486, 62 A.L.R.4th 237].) A change of custody is the exception, not the rule. It should not be undertaken unless it is " '. . . essential or expedient for the welfare of the child' . . . . [Citation.]" (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 730 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028]; see also *Speelman* v. *Suprior Court* (1983) 152 Cal.App.3d 124, 129 [199 Cal.Rptr. 784].)

The State of California has a strong public policy in ". . . protecting stable custody arrangements." (*Burchard* v. *Garay, supra,* 42 Cal.3d at p.

538, fn. 6, 541.) " 'It is well established that the courts are reluctant to order a change of custody and will not do so except for *imperative* reasons; that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living.' [Citation.]" (*In re Marriage of Carney, supra*, 24 Cal.3d at pp. 730-731, italics added.) We hold that these same rules apply to a "move away" when a shared parenting arrangement is working.

In such a situation, the burden of proof is upon the "move away" parent to demonstrate that the move is in the best interests of the children, i.e. that it is "essential and expedient" and for an "imperative reason." (24 Cal.3d at pp. 730-731; see also *Burchard* v. *Garay, supra*, 42 Cal.3d at p. 536.) As indicated in *In re Marriage of Rosson* (1986) 178 Cal.App.3d 1094, 1107 [224 Cal.Rptr. 250], ". . . the judge must consider . . . the effect of the move upon the children when [as here] an equally capable and involved parent remains in the community and offers the children the opportunity to remain where they have lived almost all of their lives." While the children here are young, they nevertheless have ties to Santa Barbara in terms of neighborhood friends, school, sports activities, dentists, medical doctors, teachers, etc.

"[A] request for a change of custody is . . . addressed in the first instance to the sound discretion of the trial judge . . . ." (*In re Marriage of Carney, supra*, 24 Cal.3d at p. 731.) An order granting or denying a change of custody will not be reversed unless there has been an abuse of discretion. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 208 [259 P.2d 656]; *In re Marriage of Carlson* (1991) 229 Cal.App.3d 1330, 1337 [280 Cal.Rptr. 840].) Before a trial court may intelligently exercise that discretion, the parties must be given adequate notice, time for meaningful mediation, and time to marshall evidence.[4]

The trial court's written August 27, 1991 order is also problematical. Civil Code section 4600.5 subdivision (i) provides: "Any order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interests of the child require modification or termination of the order. The court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification or termination order." As Justice King has indicated, the reasons for change in custody should be given ". . . in plain, everyday English . . . ." (*In re Marriage of Buser* (1987) 190 Cal.App.3d 639, 642 [235 Cal.Rptr. 785].) This requirement gives an appellate court the opportunity to conduct meaningful review.

---

[4]Our opinion should not be read as a license for the nonmoving parent to drag his or her feet. The trial court need only give such a party a reasonable time to prepare and marshal evidence.

Here, the trial court made conflicting findings. It indicated that the move was in the best interests of the children. This statement is a necessary conclusion but fails to explain why it is so. It also indicated that both parents were "easily" able to provide a good environment for the children. This determination is inconsistent with the requirement that before the court allows a move, that it be "essential and expedient" to the child's welfare. There must be an "imperative" reason therefor.

There is an additional problem with the trial court's order. The order can be read as a finding that because mother promised not to work, she would be able to spend more time with the children. This is a legitimate factor. Civil Code section 4608 subdivision (c), in pertinent part provides that ". . . in making a determination of the best interest of the child . . . the court shall . . . consider . . . the nature and amount of contact with both parents." However, this finding can also reasonably be read as saying that custody was awarded to the parent who had the financial ability to be a full-time parent. ■ A custody order may not be based on a parent's economic position. (*Burchard* v. *Garray*, *supra*, 42 Cal.3d at pp. 535, 541; *In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575, 1580-1581 [271 Cal.Rptr. 389].)

■ We recently spoke to the constitutional right to travel in the context of a family law "move away." In *In re Marriage of Fingert*, *supra*, 221 Cal.App.3d at pages 1580-1581, we recognized the constitutional right to travel and held that "[c]ourts cannot order individuals to move to and live in a community not of their choosing." (*Id.*, at p. 1581.) Unlike the situation in *Fingert*, *supra*, here, the trial court did not order mother or father to move. It merely gave its permission to move the children's residence.

Mother is free to travel inter- or intrastate. The issue is whether she can take the children with her. We certainly recognize mother's dilemma. (*In re Marriage of Fingert*, *supra*, 221 Cal.App.3d at p.1582.) A trial court's order denying her request to remove the children may "chill" her constitutional right to travel, but only indirectly. (*In re Marriage of Carlson*, *supra*, 229 Cal.App.3d at p. 1339.) Mother's rights, however, cannot be viewed in isolation. There are other competing rights. The case must also be viewed from father's perspective. (See fn. 2, *ante*.) He too has the constitutional right to travel and the concomitant right not to travel. He should not be forced to sell the family home and move to Arcadia to continue the shared parenting arrangement.

Having previously denied a stay, it is impossible to place father in a position where he can retroactively benefit by our decision. He has presumably lost one year of shared parenting. However, our views should be of

value in future cases. In "move away" cases where a shared parenting arrangement is working, an order changing custody should be made only after adequate notice, a meaningful mediation, and the parents have been given the opportunity for an outside evaluation. As indicated, a change of custody is the exception, not the rule. It can be made only for an "imperative reason."

Our decision reversing the custody order returns the case to the trial court which, in deciding the appropiate custody plan, must hold a new hearing and determine what arrangement is in the best interests of the children. It should do so only after allowing father the opportunity to obtain an outside evaluation. Of course, mother may employ her own metal health professional to do an evaluation of what is in the children's best interest.

"[W]e recognize that during the pendency of this appeal, additional circumstances bearing on the best interests of the children herein may have developed. Any such circumstances may, of course, be considered by the trial court on remand. [Citation.]" (*In re Marriage of Carney, supra,* 24 Cal.3d at p. 741; see also *Speelman* v. *Superior Court, supra,* 152 Cal.App.3d at p. 133; *In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 93-94 [98 Cal.Rptr. 501]; compare *Burchard* v. *Garay, supra,* 42 Cal.3d at p. 541.)

The August 27, 1991 change of custody order is reversed. The matter is remanded to the trial court for a new hearing consistent with the rules we have announced herein. Appellant is awarded costs on appeal.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied July 14, 1992, and the opinion was modified to read as printed above.