[No. B073307. Second Dist., Div. Six. Sept. 29, 1994.]

In re the Marriage of EDITH AND JOHN BATTENBURG.
EDITH LIEBRAND, Respondent, v.
JOHN BATTENBURG, Appellant.

COUNSEL

Daniel L. Helbert for Appellant.

Honey Kessler Amado for Respondent.

OPINION

YEGAN, J.—We confront yet another "move away" case in family law. We revisit our previous opinion in *In re Marriage of McGinnis* (1992) 7 Cal.App.4th 473 [9 Cal.Rptr.2d 182], and the California Supreme Court precedent upon which it was based. Where, as here, the parents of a kindergartner are going to live a thousand miles from one another, a shared parenting arrangement cannot work. The trial court must make a reasoned decision as to who shall be the custodial parent. The test has always been and continues to be the "child's best interests." (See e.g., *In re Marriage of Carney* (1979) 24 Cal.3d 725, 730 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028]; *Burchard* v. *Garay* (1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237]; former Civ. Code, § 4600, subd. (b), now Fam. Code, § 3040, subd. (a).)

John Battenburg (father) appeals a custody order permitting his former wife, Edith Liebrand (mother), to remove their son Andrew from the state. We affirm.[1]

Father and mother married in 1982 and separated in 1990. Their only child, Andrew, was born June 1, 1989. Prior to the order here challenged,

---

[1]The notice of appeal was timely filed because the December 2, 1992, tentative decision was not a "final judgment." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 90, p. 111.) It is a preliminary order which is not appealable.

Appeals taken from a preliminary order are deemed to be premature. "But for 'good cause,' the appellate court has discretion to validate the appeal by treating the notice as filed immediately after entry of the judgment." (Eisenberg et al., Cal. Practice Guide, Civil Appeals & Writs (The Rutter Group 1993) § 3:54, p. 3-19, italics omitted.) We have done so.

Andrew resided in California. On January 16, 1991, father and mother entered into a stipulated judgment of dissolution providing for joint legal and physical custody of Andrew. The judgment specified that Andrew would spend Sunday evening to Thursday evening with mother and Thursday evening to Sunday evening with father. The shared parenting plan worked for a time and then it did not work so well.

Both parties remarried. Mother's current spouse, Fred Liebrand, unsuccessfully attempted to find employment in California. He is a college professor in Washington State. Mother wanted to move to Washington State and take Andrew with her. She asked the trial court for an order allowing her to do so.

A seven-day contested hearing commenced on November 19, 1992. Issues of custody, visitation, support and attorney fees were addressed. Mother unsuccessfully attempted to prove that father was abusive to her. (See Fam. Code, § 3011, subd. (b).)

The custody order, in pertinent part provides: "The parties shall have joint legal custody of Andrew. . . . [¶] . . . . [¶] A. Commencing on September 1, 1994 primary physical custody of Andrew shall be with Petitioner [mother] provided she then resides in the State of Washington . . . . [¶] B. Commencing on September 1, 1994, Andrew shall visit with Respondent [father] each Easter and Christmas school vacation period . . . [also] from June 25 to August 15 of each year. [¶] C. The cost of exchanges is to be paid by Petitioner [mother]. . . . [¶] 4 D. [T]he child should be in the primary care of one of the parties, once school has commenced. The court finds that the Petitioner [mother] is in a better position to deal with school-related issues for the child than is Respondent [father]. [¶] E. It is essential that the child spend substantial time with the Petitioner [mother] and the Petitioner's [mother] move to the State of Washington is reasonable, appropriate and in good faith."[2]

We reject father's contention that mother did not meet her burden of showing that the move to the State of Washington was expedient, essential, and imperative. In allowing the move, the trial court impliedly determined that the move was "expedient," "essential," and "imperative."

" '[A] request for a change of custody is . . . addressed in the first instance to the sound discretion of the trial judge . . . .' [Citation.] An order

---

[2]The order is silent on father's visitation rights in Washington State. If he elects to visit Andrew there he should be allowed to do so upon reasonable terms and notice, at his own expense. We presume that such visitation can be handled by stipulation and order.

granting or denying a change of custody will not be reversed unless there has been an abuse of discretion. [Citations.]" (*In re Marriage of McGinnis, supra*, 7 Cal.App.4th at p. 479.) Discretion is abused when its exercise is arbitrary, whimsical, or capricious. (See, e.g., *In re Cortez* (1971) 6 Cal.3d 78, 85-86 [98 Cal.Rptr. 307, 490 P.2d 819].) In determining what is in the child's best interests, the trial court is given discretion to consider any relevant factors in making a custody award. (Fam. Code, § 3011.)

■ As a reviewing court " '. . . our power begins and ends with a determination as to whether there is *any* substantial evidence to support [the trial court's findings]; . . . we have no power to judge . . . the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' " (*In re Marriage of Martin* (1991) 229 Cal.App.3d 1196, 1200 [280 Cal.Rptr. 565].) We ask ". . . whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child. [Citation.]" (*In re Marriage of Carlson* (1991) 229 Cal.App.3d 1330, 1337 [280 Cal.Rptr. 840].)

■ In *McGinnis, supra*, 7 Cal.App.4th 473, we held that when a shared parenting arrangement was "working" a parent seeking a move-away order must prove the move is "expedient," "essential," and "imperative." In doing so, we relied upon and quoted California Supreme Court precedent, i.e., *In re Marriage of Carney, supra*, 24 Cal.3d 725, 730-731. The "expedient-essential-imperative" language had its genesis in previous Court of Appeal language approved and adopted by our California Supreme Court, i.e., in *Washburn* v. *Washburn* (1942) 49 Cal.App.2d 581, 588 [122 P.2d 96] and *Connolly* v. *Connolly* (1963) 214 Cal.App.2d 433, 436 [29 Cal.Rptr. 616].[3] Consistent with the command of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]) we simply applied the Supreme Court's use of the "expedient-essential-imperative" rule.[4]

There is no inconsistency in the use of the "expedient-essential-imperative" language and the "best interests" test. Both phrases are used in *In re*

---

[3]Black's Law Dictionary (6th ed. 1990) defines these terms as follows:

"Expedient. Apt and suitable to end in view. Werner v. Biederman, 64 Ohio App. 423, 28 N.E.2d 957, 959. Whatever is suitable and appropriate in reason for the accomplishment of a specified object." (At p. 577.)

"Essential. Indispensably necessary; important in the highest degree; requisite. That which is required for the continued existence of a thing." (At p. 546.)

"Imperative. Mandatory." (At p. 753.)

[4]In *In re Marriage of Roe* (1993) 18 Cal.App.4th 1483 [23 Cal.Rptr.2d 295], Division Four of this court rejected the expedient-essential-imperative ". . . language as inconsistent with the statute [former Civ. Code, § 4600, subd. (d); now Fam. Code, § 3040, subd. (b)] as it tends to curb or limit the discretion of the trial court." (*Id.*, at p. 1489, fn. omitted.)

*Marriage of Carney, supra*, 24 Cal.3d at page 730. In deciding whether it is in the child's best interests to change custody, the trial court should ask itself whether the custody change is "expedient-essential-imperative." There is a strong public policy to promote stable custody arrangements. (*Burchard* v. *Garay, supra*, 42 Cal.3d at pp. 535-538.) The "expedient-essential-imperative" rule applies where a child is to be removed from a shared parenting arrangement which is working. (*In re Marriage of McGinnis, supra*, 7 Cal.App.4th at p. 479.) The moving party has ". . . the burden of persuading the court that a change in custody is essential or expedient for the welfare of the child." *Burchard* v. *Garay, supra*, 42 Cal.3d at p. 536.)

In *McGinnis* it was undisputed that the joint custody arrangement was working. Mother wanted to move the children from Santa Barbara to Arcadia to be with her new husband. She sent father a letter on August 1, 1991, informing him of her plan to move on the 24th of that month. Father filed a motion to prevent the move, and on August 23, 1991, a hearing was conducted. The trial court denied father's request to maintain the status quo until an independent evaluation could be done. It ultimately allowed the wife to move with the children. We concluded this was an abuse of discretion. Father did not have enough time to present his case and marshall evidence against the contemplated move. (*In re Marriage of McGinnis, supra*, 7 Cal.App.4th at pp. 476-478.)

■ The instant case is distinguishable. Here, the parties had an opportunity to be heard and present psychological evaluations. Adequate notice was given. Substantial evidence was presented which supports the determination that the joint custody arrangement was not working and that a change in custody was in Andrew's best interests. It was expedient, essential, and imperative for custody to change.

There was lack of cooperation when Andrew was transferred pursuant to the joint parenting plan. According to father's testimony "[t]he joint custody worked well for a year, for a period of four or five months, it worked less well. It has only been disastrous with the exchanges during the summer of 1992." The parties regularly recorded the problems at the exchanges. Mother requested an order requiring that the parties stay 20 to 25 feet away from each other during the exchanges. There were also disagreements as to the location for the exchanges. The parents' attitudes and actions towards each other indicated that the joint custody arrangement was not working.

Andrew also seemed to be having difficulties with the joint parenting plan. Two expert witnesses, Doctor Mary Uneko Nozaki, a physician, and Doctor Robert Owen, a clinical psychologist, testified that Andrew had difficulties with the transfers as well.

The experts disagreed on whether the change in custody was in Andrew's best interests. Two experts opined that Andrew should stay with father in San Luis Obispo County. A third expert opined that Andrew should accompany mother to the State of Washington. ■■ ■■ A trial court is not required to accept even unanimous expert opinion at face value. (E.g., *People* v. *Samuel* (1981) 29 Cal.3d 489, 498 [174 Cal.Rptr. 684, 629 P.2d 485].) As long as the decision to reject such testimony is not "arbitrary," the trial court may reject the conclusion of an expert. (1 Witkin, Cal. Evidence (3d ed. 1986) § 524, pp. 494-495.) It is the material from which expert opinion is fashioned and the reasoning of the expert in reaching his or her conclusion that is important. (*People* v. *Samuel, supra,* 29 Cal.3d at p. 498.) The trial court alone has the duty to decide what is in the child's best interests. (See *Fewel* v. *Fewel* (1943) 23 Cal.2d 431, 435-436 [144 P.2d 592].)

Although he was opposed to the move to Washington State, Doctor Owen's evaluation of mother was as follows: "Ms. Liebrand [mother] presents her son with an enriched and stimulating environment. She has many puzzles, trucks, planes, cars, and golf clubs for Andrew to play with. She also reads to him in both English and French. The fact that she . . . [provided] so many activities . . . indicates that she is aware of the importance of stimulating her son and keeping him occupied. . . ." Doctor Owen concluded, ". . . it is obvious that Ms. Liebrand [mother] is able to provide for her son's physical, emotional, and social needs. . . . [S]he is able to balance Andrew's need for structure with a more open and stimulating environment. Andrew responds well to this parenting style and appears to be a generally well-adjusted boy." Doctor Owen also opined that when Andrew turned five, a change of custody would be necessary to accommodate Andrew's school attendance, i.e., in September of 1994. The trial court obviously credited this testimony even though it rejected Doctor Owen's recommendation.

When we review the evidence in light of the salient guidelines (see, *ante,* p. 1342) father has not demonstrated that there was an abuse of discretion as a matter of law.

Finally, the trial court ordered that mother pay father $3,000 attorney fees pursuant to former Civil Code section 4370.6 (now Fam. Code, § 271) for litigating the claim of spousal abuse in bad faith.

■ Father argues that the sanction should be increased as a matter of law. Former Civil Code section 4370.6 (now Fam. Code, § 271) vests the trial court with the discretion to award attorney fees and costs. It provides in

pertinent part: "In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities." This provision does not require that the sanction imposed compensate for all fees and costs expended. There was no abuse of discretion as a matter of law in the imposition of only $3,000 against mother.

The judgment is affirmed. Each party shall bear its own attorney fees and costs.

Stone (S. J.), P. J., and Gilbert, J., concurred.