88 Cal.Rptr.2d 197 (1999)
74 Cal.App.4th 636
Patrick Francis HOVERSTEN, Petitioner,
v.
The SUPERIOR COURT of San Luis Obispo County, Respondent;
Michelle Hoversten, Real Party in Interest.
No. B122133.
Court of Appeal, Second District, Division Six.
August 24, 1999.
As Modified September 20, 1999.
*198 Patrick Francis Hoversten, in pro. per., for Petitioner.
*199 James B. Lindholm, Jr., County Counsel, County of San Luis Obispo, and Ann Duggan, Deputy County Counsel, for Respondent.
No appearance for Real Party in Interest.

OPINION AND ORDER
GILBERT, Acting P.J.
This case concerns the issue of a prisoner's access to a civil court proceeding. Here we conclude that a prisoner is entitled to a hearing to determine his right to legal custody and visitation of his minor children.

FACTS
Petitioner Patrick Francis Hoversten and real party in interest Michelle Hoversten, now Michelle Cole (hereafter Cole), are the parents of two young boys. In March 1992, they obtained a judgment of dissolution of their marriage which granted them joint legal custody of their children, with sole physical custody to Cole.
On the morning of July 13, 1993, Hoversten, armed with a revolver, robbed a credit union in Atascadero. While fleeing, he fired his gun to ward off pursuers. Minutes after the robbery, Hoversten picked up his sons at Cole's home and drove them to nursery school.
Because of Hoversten's criminal behavior, Cole moved in family court for modification of custody and visitation.
In the criminal trial which took place a few months later, a jury found Hoversten guilty of robbery and assault with a firearm. He was sentenced to serve 19 years in prison.[1] A few days later, respondent family court issued an order granting temporary sole legal custody to Cole with no visitation to Hoversten. At this hearing, Hoversten appeared in propria persona and requested appointed counsel. Cole was represented by counsel. The court took Hoversten's request for counsel under submission but never ruled on it.
In a hearing on August 5, 1994, at which both parties were present, the family court denied Cole sole legal custody of the minor children. The court postponed ruling on the issue of visitation pending a hearing set for November 18, 1994. Cole had counsel hut again Hoversten was unrepresented.
On November 18, 1994, the court modified the order for custody to reflect that Hoversten was now in state prison. In fact, he was then housed at Mule Creek Prison located more than 250 miles from the court. Hoversten was not present at this hearing, nor was he represented by counsel. The court awarded Cole sole legal and physical custody of the children. It denied Hoversten's request for visitation. Hoversten was allowed contact with his children through letters and telephone calls.
On May 8, 1995, Hoversten, in propria persona, filed a motion which sought, among other things, to set aside earlier orders denying him custody and visitation with his children. His motion was set for June 2, 1995. He did not appear and the motion was ordered off calendar.
Thereafter, Hoversten sought relief by way of appeal and extraordinary writ. We summarily denied the writ action on August 24, 1995. On January 23, 1996, we dismissed as nonappealable a purported appeal from the order placing Hoversten's motion off calendar.
On October 29, 1997, Hoversten again moved the trial court to set aside the change of custody order. On November 5, 1997, the court denied this motion as procedurally flawed.
Hoversten filed a writ petition claiming he was illegally prevented from appearing *200 at hearings in which his parental rights were adjudged. (See Payne v. Superior Court (1976) 17 Cal.3d 908, 920, 132 Cal. Rptr. 405, 553 P.2d 565; In re Brittany S. (1993) 17 Cal.App.4th 1399, 1402, 22 Cal. Rptr.2d 50.) We issued an order to show cause.

DISCUSSION

1. Effect of Previous Denials of Writ Petitions
Respondent court argues that res judicata precludes Hoversten from challenging the lower court's orders because this court summarily denied a writ petition which raised identical issues.
The denial without opinion of a petition for a writ of mandate or prohibition is not res judicata. (Kowis v. Howard (1992) 3 Cal.4th 888, 896, 12 Cal.Rptr.2d 728, 838 P.2d 250; Bay Development Ltd. v. Superior Court (1990) 50 Cal.3d 1012, 1024, 269 Cal.Rptr. 720, 791 P.2d 290.) Our summary denial of the previous writ petition was not a decision on the merits.

2. Jurisdiction to Modify Visitation Order
Apart from statutory authority, the trial court has inherent power to correct its judgment or to vacate a void judgment. (Olivera v. Grace (1942) 19 Cal.2d 570, 574-575, 122 P.2d 564.) "A final judgment may be set aside by a court if it has been established that extrinsic factors have prevented one party to the litigation from presenting his or her case. [Citation.]" (In re Marriage of Park (1980) 27 Cal.3d 337, 342, 165 Cal.Rptr. 792, 612 P.2d 882.)
Prison walls are a powerful restraint on a litigant wishing to appear in a civil proceeding. (Payne v. Superior Court, supra, 17 Cal.3d 908, 132 Cal.Rptr. 405, 553 P.2d 565.) In 1995 and 1997, without the aid of counsel, Hoversten filed motions to set aside the adverse visitation and custody orders. Relief was denied because he failed to appear.
To obtain relief, Hoversten is not required to demonstrate with certainty that a different result would occur on retrial. He need only show facts indicating a sufficiently meritorious claim to entitle him to a fair adversary hearing. (In re Marriage of Park, supra, 27 Cal.3d 337, 346, 165 Cal.Rptr. 792, 612 P.2d 882.)

3. Loss of a Substantial Right
Inmates retain the right of reasonable visitation with their children. (In re Smith (1980) 112 Cal.App.3d 956, 968-969, 169 Cal.Rptr. 564; see also In re Brittany S., supra, 17 Cal.App.4th 1399, 1402, 22 Cal.Rptr.2d 50.)
In its brief, respondent court underestimates the nature of the right that is at stake. It asserts that given Hoversten's incarceration, he has not been deprived of any significant interest. Respondent takes the position that, because Hoversten lost physical custody in 1993, and because there is no merit in his claim that he has a right of custody, he has not been denied a substantial right. This argument overlooks that Hoversten also seeks visitation and joint legal custody.
As to visitation, "[t]he relationship between parent and child is so basic to the human equation as to be considered a fundamental right, and that relationship should be recognized and protected by all of society, no less jailers. [Citations.] Interference with that right should only be justified by some compelling necessity, i.e., a parent dangerously abusing a child...." (In re Smith, supra, 112 Cal.App.3d 956, 968-969, 169 Cal.Rptr. 564.) It is elemental that any order concerning child custody and visitation must comport with due process. (McLaughlin v. Superior Court (1983) 140 Cal.App.3d 473, 483, 189 Cal. Rptr. 479.)
"[C]hildren have strong emotional ties to even the "worst' of parents. [Citations.]" (Hansen v. Department of Social *201 Services (1987) 193 Cal.App.3d 283, 292, 238 Cal.Rptr. 232.) ""While `use a gun, go to prison' may well be an appropriate legal maxim, `go to prison, lose your child' is not...." (In re Brittany S., supra, 17 Cal.App.4th 1399, 1402, 22 Cal.Rptr.2d 50.) "Visitation rights arise from the very `fact of parenthood' and the constitutionally protected right `"to marry, establish a home and bring up children."' [Citation.]" (In re Julie M. (1999) 69 Cal.App.4th 41, 49, 81 Cal.Rptr.2d 354.)
Family Code section 3100, subdivision (a), provides that "the court shall grant reasonable visitation rights to a parent unless it is shown that the visitation would be detrimental to the best interest of the child...." Limiting parental contact to a few letters and telephone calls, as was the case here, should be used only as a last resort. (In re Brittany S., supra, 17 Cal.App.4th 1399, 1407, 22 Cal.Rptr.2d 50.)
To say that Hoversten is not entitled to a hearing because of the egregious nature of his conduct during and after the robbery is to put the cart before the horse. The purpose for which Hoversten seeks a hearing is to determine whether it is in the children's best interest to have visitation with him despite his crime and incarceration. We take no position as to whether visitation is appropriate. At this point, our concern is that Hoversten be granted reasonable access to the court.

4. Access to the Courts
One of the goals of our legal system is to secure access to our courts for everyone. (Boddie v. Connecticut (1971) 401 U.S. 371, 374, 91 S.Ct. 780, 784, 28 L.Ed.2d 113; Salas v. Cortez (1979) 24 Cal.3d 22, 27, 154 Cal.Rptr. 529, 593 P.2d 226.) Unfortunately, indigent prisoners face obstacles that prevent their appearances in civil court proceedings. Such obstacles, however, should not deny access to prisoners who have informed the court of their desire for a hearing to determine visitation rights.
Prisoners do not ordinarily have the right to appear personally in court on civil matters. (Payne v. Superior Court, supra, 17 Cal.3d 908, 926-927, 132 Cal. Rptr. 405, 553 P.2d 565; but see Pen.Code, § 2625.) But courts are encouraged to devise alternative means to secure prisoners "meaningful" access to the courts. (Wantuch v. Davis (1995) 32 Cal.App.4th 786, 792, 39 Cal.Rptr.2d 47.)
The trial court here did not properly consider Hoversten's inability to proceed. Once the court was aware of Hoversten's claim that he was an indigent prisoner, it became incumbent upon it to take measures to assure he had some kind of access. "In determining the appropriate remedy to secure access, the trial court should consider the nature of the action, the potential effect on the prisoner's property, the necessity for the prisoner's presence, the prisoner's role in the action, the prisoner's literacy, intelligence and competence to represent himself or herself, the stage of the proceedings, the access of the prisoner to a law library and legal materials, the length of the sentence, the feasibility of transferring the prisoner to court and the cost and inconvenience to the prison and judicial systems. [Citations.]" (Wantuch v. Davis, supra, 32 Cal.App.4th 786, 793, 39 Cal.Rptr.2d 47.)

5. The Fashioning of an Appropriate Remedy
Our Supreme Court has directed trial courts "to consider the defendant's indigency, the feasibility of a continuance, whether defendant's interests are actually at stake, and whether counsel would be helpful under the circumstances of the case." (Yarbrough v. Superior Court (1985) 39 Cal.3d 197, 207, 216 Cal.Rptr. 425, 702 P.2d 583; Payne v. Superior Court, supra, 17 Cal.3d 908, 924, 132 Cal. Rptr. 405, 553 P.2d 565.)
Some years ago we wrote: "In Yarbrough v. Superior Court ... our Supreme Court expressed the hope that the Legislature *202 would solve the problem of compensation for attorneys, but reaffirmed the right of an indigent inmate to have access to the courts in civil cases. Although Yarbrough placed the question of whether a court may appoint an unwilling attorney to represent an indigent on the `judicial back burner,' here, the issue is boiling over." (Cunningham v. Superior Court (1986) 177 Cal.App.3d 336, 341, 222 Cal.Rptr. 854.) As this case illustrates, the problem of inmate access to the courts in civil matters remains "a custom far more honored in its breach than in its observance." (Id., at p. 343, 222 Cal.Rptr. 854; see also Wantuch v. Davis, supra, 32 Cal.App.4th 786, 792, 39 Cal.Rptr.2d 47.)
In Wantuch v. Davis, supra, 32 Cal. App.4th 786, 790-791, 39 Cal.Rptr.2d 47, an incarcerated plaintiff brought a civil action against his former criminal defense attorney. Due to his incarceration, Wantuch did not appear at a status conference. The trial court struck his pleadings and entered judgment against him. The Court of Appeal reversed. It found Wantuch was denied his right of access to the court. It remanded the matter to the trial court to determine the question of access.
The Wantuch court noted several remedies for prisoners to secure access to the court: "(1) deferral of the action until the prisoner is released; (2) appointment of counsel for the prisoner; (3) transfer of the prisoner to court; (4) utilization of depositions in lieu of personal appearances; (5) holding of trial in prison; (6) conduct of status and settlement conferences, hearings on motions and other pretrial proceedings by telephone; (7) propounding of written discovery; (8) use of closed circuit television or other modern electronic media; and (9) implementation of other innovative, imaginative procedures." (Wantuch v. Davis, supra, 32 Cal. App.4th 786, 792-793, 39 Cal.Rptr.2d 47, citations and fn. omitted.)
In Cunningham we decided that the conscription of unwilling and uncompensated counsel violates equal protection of the law. (Cunningham v. Superior Court, supra, 177 Cal.App.3d 336, 356-357, 222 Cal.Rptr. 854; People v. Ortiz (1990) 51 Cal.3d 975, 985-986, 275 Cal.Rptr. 191, 800 P.2d 547.) If pro bono counsel is not available to represent him, and if Hoversten's appearance in court is not feasible, the court still has choices. To the comprehensive list of options noted in Wantuch, we would add, in child custody or visitation matters, the services of the family court mediator. Family Code section 3170, subdivision (a) provides: "If it appears on the face of a petition, application, or other pleading to obtain or modify a temporary or permanent custody or visitation order that custody, visitation, or both are contested, the court shall set the contested issues for mediation."
"[A]s a practical matter, the failure to set the dispute for mediation in the conciliation court is a bar to a hearing on all custody or visitation disputes. [Citations.]" (Hogoboom v. Superior Court (1996) 51 Cal.App.4th 653, 670, 59 Cal. Rptr.2d 254; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1999) ¶ 7:181, p. 7-57.)
Affording persons such as Hoversten the opportunity to participate in mediation also ensures a form of access. (Marriage of McGinnis (1992) 7 Cal.App.4th 473, 478-479, 9 Cal.Rptr.2d 182, disapproved on other grounds in Marriage of Burgess (1996) 13 Cal.4th 25, 36-37, 51 Cal.Rptr.2d 444, 913 P.2d 473.) This may be problematic in counties that use confidential mediators where the court does not review the mediator's recommendations. But the court can also make its determination from declarations submitted by the parties. (Reifler v. Superior Court (1974) 39 Cal. App.3d 479, 484, 114 Cal.Rptr. 356.) The court should also take into consideration the suitability of visitation at the prison facility where Hoversten is now housed, the San Luis Obispo Men's Colony, which is a few miles from his children's residence.

6. Inadequacy of Other Remedies
Respondent court contends that the petition should be denied because Hoversten *203 has an adequate remedy at law. It points out that he may file a motion to modify the visitation order.
Our issuance of an alternative writ establishes the lack of any adequate remedy. (People ex rel. Younger v. County of El Dorado (1971) 5 Cal.3d 480, 492, 96 Cal. Rptr. 553, 487 P.2d 1193; Omaha Indemnity Co. v. Superior Court (1989) 209 Cal. App.3d 1266, 1275, 258 Cal.Rptr. 66; but see MacPhail v. Court of Appeal (1985) 39 Cal.3d 454, 459, 217 Cal.Rptr. 36, 703 P.2d 374.)

CONCLUSION
Let a writ of mandate issue commanding respondent court to set aside its order of November 18, 1994, and all orders after that date regarding the issue of legal custody and visitation with the minor children. Respondent court is further commanded to conduct further proceedings in light of the views expressed in this opinion. We vacate the order to show cause.
YEGAN, J., and MATZ, J.[*], concur.
NOTES
[1] In an unpublished opinion (People v. Hoversten (Feb. 20, 1996) B086775), we affirmed the judgment of conviction and sentence.
[*] Assigned by the Chairperson of the Judicial Council.