Filed 10/29/15  In re Marriage of Zangger and Faith CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of MICHAEL ZANGGER and KAREY FAITH.<br><br>_____<br><br>MICHAEL ZANGGER,<br><br>      Respondent,<br><br>      v.<br><br>KAREY FAITH,<br><br>      Appellant. | B253341<br><br>(Los Angeles County<br>Super. Ct. No. KD071789) |

APPEAL from an order of the Superior Court of Los Angeles County,
Rocky L. Crabb, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Law Office of Milo F. DeArmey, Milo F. DeArmey and Matthew S. DeArmey, for Respondent.

Law Office of Leslie Ellen Shear, Leslie Ellen Shear and Julia C. Shear Kushner, for Appellant.

Karey Faith (mother), the former spouse of Michael Zangger (father), appeals a postjudgment order in a marital dissolution proceeding. The appeal is taken from an order denying mother's request for an order (RFO) which sought, inter alia, an order appointing a child custody evaluator.

The essential issue presented is whether the trial court abused its discretion in denying mother's postjudgment request for a child custody evaluation. On the record presented, we perceive no abuse and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in 2005 and separated less than two years later. There is one child of the marriage (hereafter, the minor), who was born in 2007 and was five months old at the time of separation. In October 2007, father filed a petition for dissolution of marriage.

1. *Earlier proceedings; following bifurcated custody trial, court renders statement of decision awarding sole physical custody to father and denying mother's belated request for a child custody evaluation.*

Prior to trial, mother had physical responsibility for the minor 86 percent of the time, and father had responsibility for the minor during the remaining 14 percent of the time.

Beginning on August 29, 2011, trial proceeded on the bifurcated issue of child custody and visitation, over portions of ten court days, concluding on September 14, 2011. Thereafter, on December 28, 2011, the trial court issued a 25-page statement of decision awarding sole physical custody to father, with visitation to mother.

The trial court concluded: "Under the unique facts of this case as set forth in this Final Statement of Decision, [t]he Court finds that it is in the best interests of the child that the petitioner father be awarded sole physical custody of the child." The trial court explained: "From the inception of this case, the petitioner [father] has shown a willingness to recognize that the child has two parents, and that both parents should share the rights and responsibilities of child rearing. Respondent [mother] has on the other

2

hand viewed herself as the one person who should raise the child, to the exclusion of petitioner. In conformity with her view, the respondent has attempted to marginalize and alienate the child from the petitioner. [¶] When the child is with the petitioner, as soon as they are out of respondent's presence, they enjoy their time together, and petitioner is able to be a good parent to [the minor]. Petitioner has helped to raise his now 17 year old son . . . , and is ready and able to raise [the minor]. The Court believes that the petitioner can provide for the daily emotional, physical, interactive, educational, and social needs of the child. [¶] It is significant that the child now routinely exhibits serious behavioral problems, hitting and kicking other children at preschool, at the park, and at other places. When asked why he does this he blames it on the petitioner, although the Court finds there is no credible evidence that petitioner has ever hit, kicked or spanked the child, or has been anything other than a caring father to the child. Except for a reference in her deposition, respondent has never tried to communicate with the petitioner about the abuse allegations that respondent says have been going on for over two years. Respondent, who has the child 86% of the time has done absolutely nothing to get the child professional help, or to have the allegations of the child reported to investigative authorities. Instead, the child is left to suffer with anger, aggression, conflict, and confusion."

The statement of decision also denied mother's belated request for a custody evaluation. The trial court stated: "The Court recognizes that it has the discretion to order a custody evaluation in this case. While custody mediation is a mandatory requirement in all custody cases, a child custody evaluation is not mandatory. [¶] During the several years that this case has been pending, and up to the time of trial, the respondent [mother] has had many opportunities, to request a custody evaluation. Respondent instead chose not to do so. Respondent offered no expert witness testimony concerning custody at trial. Currently in the Los Angeles County Family Court Services Department, a full custody evaluation will be completed, approximately eight months after it is ordered by the Court. Full custody evaluations through private evaluators may take a longer or shorter period of time [de]pending on the availability of the evaluator, the

3

extent of the evaluation, the number of witnesses contacted or interviewed, and the cooperation, or lack thereof of the parties. [¶] Respondent is in the unique situation of being a practicing family law attorney, which is not held by this Court to be to her benefit or detriment, but it is simply a fact she asserts and acknowledges. Respondent has been represented by two separate and very competent trial attorneys in these proceedings at different times. Petitioner has also been represented by very competent trial attorneys in this matter. It was not until the facts began to develop at trial, and this Court rendered its initial Tentative Statement of Decision, that respondent has now decided to argue that the Court should perhaps have postponed the custody-visitation trial for a longer period, and ordered a custody evaluation sua sponte. This is a litigation tactic by respondent that the Court does not believe would serve the best interests of the minor child."

The statement of decision specified: "This order is a permanent/final order under *Montenegro v. Diaz*, (2001) 26 Cal. 4th 249. This order, is effective when signed and filed."

2. *Entry of final judgment awarding sole physical custody to father; mother did not appeal the judgment.*

Following a trial by declaration on reserved issues, on November 26, 2012, the trial court entered a final judgment of dissolution. The judgment specified the "issues of Custody and Visitation are based on the facts and circumstances as existed at the time of trial and not date of entry of this Judgment for purposes of the doctrine of changed circumstances."

Mother did not appeal the November 26, 2012 judgment.

4

3. *Postjudgment proceedings.*

    a. *The first RFO.*

Five months after entry of judgment, on April 23, 2013, mother filed an RFO seeking a "revision" in custody, the appointment of a child custody evaluator, an order for conjoint family counseling, and a change of the residential arrangement and legal custody plan. The moving papers modified the mandatory Judicial Council form, FL-300, by eliminating the "MODIFICATION" box and replacing it with a box captioned "REVISION."

On July 11, 2013, the trial court summarily denied the RFO "based on the modified Judicial Council form." (See Cal. Rules of Court, rule 1.31(e) [no alteration of mandatory Judicial Council forms].)

    b. *The second RFO.*

On August 2, 2013, mother filed another RFO, which is the subject of this appeal.

This RFO, which was denominated a request for modification of child custody, again requested the appointment of a child custody evaluator, and a change in custody "in light of the findings of the custody evaluation." Mother's RFO also requested an order for conjoint counseling, and sole legal custody and authority with respect to the minor's special education decisions.

On October 18, 2013, the matter came on for hearing. Father attended the hearing. Mother was not present but was represented by counsel. Mother's counsel explained mother was not requesting "sole legal or primary physical custody" -- rather, she was seeking an assessment to determine whether a change to the parenting plan was warranted.

The trial court observed, "You're telling me now that really what your client wants is simply that the child have further medical or psychiatric evaluation, not for the purposes of changing custody, but simply for the purposes of making sure that everything is being done to help [him]."

5

Mother's counsel disagreed with that characterization of her argument, stating an evaluation was necessary because "the court does not have information to determine what are the contributing factors" as to why the minor was not "flourishing."

The trial court denied mother's postjudgment request for a child custody evaluation. It noted that prior to the custody trial, "neither party requested a child custody evaluation under Evidence Code section 730 or Family Code section 3111, notwithstanding the fact that they were both represented by experienced family law attorneys, and notwithstanding the fact that [mother] is herself an experienced attorney also practicing in family law."

The trial court also denied mother's request for conjoint counseling. It also refused to order any change in legal custody, "not[ing] that [mother] has not established a significant change in circumstances since the court's judgment in this case." The trial court did order a nonintrusive neuropsychological evaluation to determine the cause of the minor's behavioral problems, but the expert was not "to make any recommendations on custody or visitation."[1]

On December 13, 2013, mother filed a timely notice of appeal from the October 18, 2013 order denying her RFO, which is appealable as an order after judgment. (Code Civ. Proc., § 904.1, subd. (a)(2).)

## CONTENTIONS

Mother contends: the trial court erred in denying her postjudgment request for a child custody evaluation and it used the wrong legal standard in ruling on the request; the trial court also erred in denying her requests for conjoint counseling and for authority to exercise the minor's federal educational rights; and the trial court failed to maintain impartiality.

---

[1]    We note the declaration of Dr. Bruce Harshman, filed in support of mother's RFO, stated "the records point to an urgent need for a neuropsychological assessment of [the minor] in conjunction with a full child custody evaluation." The trial court did order a neuropsychological assessment, which mother has eschewed.

**DISCUSSION**

1. *General principles; the interplay of the "best interest of the child" standard and the changed-circumstance rule.*

In attacking the trial court's order denying her second RFO, mother contends the trial court erred in denying relief on the ground she had not established "a significant change in circumstances since the court's judgment in this case." Mother argues the trial court's focus at the RFO hearing should have been on the minor's best interests, as the child's welfare is paramount at all times.

The law in this area is quite clear. "At the adversarial hearing, the court has ' "the widest discretion to choose a parenting plan that is in the best interest of the child" ' [citations], but 'must look to all the circumstances bearing on the best interest of the minor child.' [Citation.]" (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256, italics omitted (*Montenegro*).)

Although "the statutory scheme only requires courts to ascertain the 'best interest of the child' (e.g., [Fam. Code,] §§ 3011, 3020, 3040, 3087), th[e California Supreme C]ourt has articulated a variation on the best interest standard *once a final judicial custody determination is in place. Under the so-called changed circumstance rule, a party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification.* [Citation.] . . . '[T]he changed-circumstance rule is not a different test, devised to supplant the statutory test, but an adjunct to the best-interest test. It provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements.' [Citation.]" (*Montenegro, supra,* 26 Cal.4th at p. 256, italics added.)

7

2. *The discrete issue before this court is not whether the trial court should have ordered a change in custody; mother's contention is merely that the trial court should have ordered a custody evaluation to determine whether the minor would benefit from a change in custody; no abuse of discretion in denial of mother's belated request for a postjudgment custody evaluation.*

Having identified the principles governing a postjudgment request for a change in custody, we turn to the narrow issue presented herein. At the hearing on the second RFO, mother's counsel clarified that mother was not actually requesting a change in custody. Rather, "[w]hat she has requested is *an assessment* to determine what this child's needs are before the parents or the court could consider whether any change to the base parenting plan is necessary or appropriate." (Italics added.) Consistent therewith, on appeal mother asserts she is not seeking a change in custody; all she seeks is an evaluation. Indeed, mother's opening brief on appeal concedes that "without an evaluation, she did not know if [the minor] would benefit from such a change."

As indicated, after hearing the matter, the trial court denied mother's request for a child custody evaluation.[2] Instead, the trial court ordered a neuropsychological evaluation solely to assess the minor's behavioral issues.[3]

---

[2]    Evidence Code section 730 states in relevant part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party *may appoint one or more experts* to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." (Italics added.)

Also, Family Code section 3111 provides at subdivision (a): "In any contested proceeding involving child custody or visitation rights, the court *may appoint a child custody evaluator* to conduct a child custody evaluation in cases where the court determines it is in the best interests of the child." (Italics added.)

[3]    As indicated, in ordering a neuropsychological evaluation to diagnose the cause of the minor's behavioral issues, the trial court specified that said evaluation was not to make any recommendations with respect to custody or visitation. On appeal, mother

8

Thus, the discrete issue before this court is whether the trial court erred in refusing mother's postjudgment request for a child custody evaluation.

     a. *Standard of review*.

In a child custody case, we review the trial court's decision refusing to appoint a child custody evaluator for an abuse of discretion. (*In re Marriage of E.U. and J.E.* (2012) 212 Cal.App.4th 1377, 1389; *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 835 [trial court has discretion in appointment and selection of expert witnesses].)

" 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; accord, *Blue Cross of California, Inc. v. Superior Court* (2009) 180 Cal.App.4th 1237, 1258.)

     b. *No abuse of discretion in trial court's refusal to order a child custody evaluation*.

As we have noted, at the 2011 custody trial, mother did not request a child custody evaluation until after the trial court issued its tentative ruling. At that juncture, the trial court denied mother's request for a formal custody evaluation on the ground it would require an eight-month delay, and expressed its concern that the belated request was a "litigation tactic" that would not serve the best interest of the minor.

In April 2013, five months after the November 2012 entry of judgment, mother filed the initial RFO seeking a "revision" in custody, asserting a change of circumstances and requesting a custody evaluation.

In August 2013, one month after the trial court denied the first RFO, mother filed the second RFO, again requesting a custody evaluation based on changed circumstances.

---

asserts that because the trial court limited the scope of the neuropsychological evaluation, she decided not to proceed with it.

Given this chronology, at the hearing on the second RFO, the trial court duly noted that mother failed to request a custody evaluation before the custody trial, notwithstanding the fact that mother was represented by experienced family law attorneys and is herself an experienced attorney practicing in family law. As the trial court observed at the second RFO hearing, mother now was requesting an evaluation "so that the court could pass its responsibility to make decisions onto a professional and the professional might reach a conclusion different than the court did after a trial in this case." The trial court reasonably could conclude that the latest RFO requesting a custody evaluation was simply an attempt to make an evidentiary showing that could have been made at trial; however, a custody evaluation was not presented at the custody trial only because mother had made a tactical choice to refrain from requesting a custody evaluation until after the court issued its tentative ruling in favor of father.[4]

We further note that at the hearing on the second RFO, mother did not make a persuasive showing why a custody evaluation was warranted at the postjudgment stage. Although mother presented evidence of minor's continued behavioral problems, the trial court noted that it was more of the same that it had heard during the custody trial and father presented evidence to the contrary. In mother's own words, she simply sought "an assessment to determine . . . whether any change to the base parenting plan is necessary or appropriate." Stated otherwise, the request for a custody evaluation was in the nature of a proverbial fishing expedition, in the hope that the evaluator's report might ultimately achieve a change in custody.

Mother also relies on *In re Marriage of McGinnis* (1992) 7 Cal.App.4th 473 (*McGinnis*) (disapproved on another ground by *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 38, fn. 10) for the proposition that it can be an abuse of discretion to deny a parent's request for an independent custody evaluation. *McGinnis* is inapposite. There, the parents entered into a stipulated judgment of dissolution and agreed to joint legal and

---

**4** Likewise, father's counsel properly objected to the latest application for a custody evaluation as a "request for a second bite at the apple."

physical custody. (*Id*. at p. 475.) Wife subsequently wanted to relocate from Santa Barbara to Arcadia with their three children. Husband filed a motion to prevent wife from changing the children's residence to Arcadia, and asked the court to enter an order maintaining the status quo until an independent evaluation could be done. (*Id*. at p. 476.) The trial court denied husband's request for an evaluation and entered an order awarding physical custody to wife to enable her to relocate with the children to Arcadia. (*Id*. at pp. 476-477.) The reviewing court reversed and directed the trial court on remand to hold a new hearing to determine what arrangement was in the best interests of the children, "only after allowing [husband] the opportunity to obtain an outside evaluation." (*Id*. at p. 481.) Thus, in *McGinnis*, the trial court erroneously altered the status quo by allowing wife to relocate with the children, without enabling father to obtain a custody evaluation prior to the change in physical custody. *McGinnis* has no application to this fact situation, where there has been no change in physical custody.

For all these reasons, we perceive no abuse of discretion in the trial court's denial of mother's belated request for a postjudgment custody evaluation.

3. *No merit to mother's remaining arguments*.

a. *Denial of mother's request for authority to exercise the minor's federal educational rights*.

Mother contends the trial court erred in denying her RFO insofar as she sought authority to exercise the minor's federal educational rights.

" ' "Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " [Citation.] "We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." ' [Citation.]" (*Holguin v. DISH Network LLC* (2014) 229 Cal.App.4th 1310, 1322-1323, fn. 5 (*Holguin*).)

11

Because mother does not present any legal analysis or argument in support of her assertion the trial court erred in denying her request for authority to exercise the minor's federal educational rights, the contention has been waived.

b. *No merit to mother's claim she was denied an impartial tribunal*.

Mother contends the trial court failed to maintain the appearance of impartiality and engaged in a course of conduct hostile to her, suggesting that unconscious "confirmatory bias" may have influenced the trial court's rulings against her.[5]

In support, mother cites the *trial* transcript. Mother asserts that *at trial*, the trial court "frequently disparaged the weight of [her] evidence and arguments before hearing all the evidence," and it "repeatedly took over questioning of [her] witnesses using a confrontational and potentially intimidating style of questioning, punctuated by negative remarks about their credibility during the course of their testimony." Mother surmises the "court's attitude and conduct *may have had* a chilling effect on witnesses, and raises concerns that [it] *may have failed to keep an open mind during the trial and post-trial proceedings*." (Italics added.)

Mother's claim of bias fails for multiple reasons. It is established that "ruling against a party, even erroneously, does not show bias. [Citations.]" (*Thornbrough v. Western Placer Unified School Dist*. (2013) 223 Cal.App.4th 169, 190, fn. 18.) Further, mother's attack on the trial court's impartiality is speculative; her assertion the court "may have failed to keep an open mind" is pure conjecture. Moreover, the argument that bias occurred during the custody trial is not properly before this court. As indicated, following the custody trial, mother elected not to appeal the November 26, 2012 judgment. That judgment is long since final and is not subject to a collateral attack by mother on the trial court's impartiality in conducting the trial. Mother's reliance on the trial transcript to show judicial bias at the hearing on the second RFO is misplaced.

---

[5] Confirmatory bias consists of viewing evidence in a light that confirms a "preconceived idea or hypothesis." (*Dwight R. v. Christy B*. (2013) 212 Cal.App.4th 697, 706.)

In an attempt to show bias, mother also relies on the fact that the trial court denied her first RFO on the "technicality" that her attorney modified the mandatory Judicial Council FL-300 form. However, the trial court's ruling was proper; the modification of the form was in violation of the Rules of Court. (See Cal. Rules of Court, rule 1.31(e) [no alteration of mandatory Judicial Council forms].) Accordingly, the argument is meritless.

For these reasons, we reject mother's contention that the order on the second RFO must be reversed because a biased tribunal deprived her of due process.

### c. *Denial of mother's request for conjoint family counseling.*

Mother contends the trial court erred in denying her request for conjoint family counseling pursuant to Family Code section 3190.

Family Code section 3190 provides in relevant part: "(a) *The court may* require parents or any other party involved in a custody or visitation dispute, and the minor child, to participate in outpatient counseling with a licensed mental health professional, or through other community programs and services that provide appropriate counseling, including, but not limited to, mental health or substance abuse services, for not more than one year, provided that the program selected has counseling available for the designated period of time, *if the court finds both of the following*: [¶] (1) The dispute between the parents, between the parent or parents and the child, between the parent or parents and another party seeking custody or visitation rights with the child, or between a party seeking custody or visitation rights and the child, poses a substantial danger to the best interest of the child. [¶] (2) The counseling is in the best interest of the child." (Italics added.) Thus, under Family Code section 3190, the trial court has discretion to order such counseling for up to one year, if the court finds the parties' dispute poses a substantial danger to the child's best interest and that counseling is in the child's best interest.

Mother's briefing does not acknowledge that a court order to participate in such counseling is discretionary (Fam. Code, § 3190, subd. (a)) and therefore is subject to

13

deferential review. Further, mother does not argue the trial court should have found the parties' dispute poses a substantial danger to the best interest of the minor and that counseling would be in the minor's best interest. (Fam. Code, § 3190, subds. (a)(1) & (a)(2).) As indicated, it is not this court's role to develop an appellant's arguments, and the absence of cogent legal argument allows this court to treat the contention as waived. (*Holguin*, *supra*, 229 Cal.App.4th at pp. 1322-1323, fn. 5; *In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164.) Given the state of mother's briefing, this contention requires no further discussion.

## DISPOSITION

The October 18, 2013 postjudgment order is affirmed.  Father shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:



ALDRICH, J.



KITCHING, J.[*]

---

[*]      Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.