[No. G035270. Fourth Dist., Div. Three. May 25, 2006.]

In re the Marriage of MELINDA T. and TIMOTHY M. SEAGONDOLLAR.
MELINDA T. REVERON, Respondent, v.
TIMOTHY M. SEAGONDOLLAR, Appellant.

1118

COUNSEL

Leslie Ellen Shear for Appellant.

Melinda T. Reveron, in pro. per., for Respondent.

OPINION

**FYBEL, J.—**

## I. INTRODUCTION

The marriage of Timothy M. Seagondollar (Timothy) and Melinda T. Seagondollar (Melinda)[1] ended in dissolution, and they were given shared physical and legal custody of their four minor children. Timothy appeals from a postjudgment order changing that arrangement to give Melinda sole physical and legal custody and permitting her to move with the children to Virginia, where Melinda now resides with her new husband. We reverse because the trial court deprived Timothy of an opportunity to be meaningfully heard before granting Melinda's "move-away" request.

A custody decision allowing one parent to move the children out of the state necessarily interferes with the other parent's ability to have frequent and continuing contact with them. Such a decision "is one of the most serious decisions a family law court is required to make," and should not be made "in haste." (*In re Marriage of McGinnis* (1992) 7 Cal.App.4th 473, 477 [9 Cal.Rptr.2d 182], disapproved on other grounds in *In re Marriage of Burgess*

---

[1] We use the parties' first names to avoid confusion, not out of disrespect.

(1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473].) "The best interests of the children require that competing claims be considered in a calm, dispassionate manner and only after the parties have had an opportunity to be meaningfully heard." (*In re Marriage of McGinnis, supra,* 7 Cal.App.4th at p. 477.)

Those requirements were not met in granting Melinda's move-away request. Virtually from start to finish, the trial court handling this matter failed to follow or evenly apply the rules and procedures governing family law matters and, by failing to do so, denied Timothy the opportunity to be meaningfully heard. The rules of procedure for reaching family law decisions—contained in the Family Code, the Code of Civil Procedure, the California Rules of Court, and local court rules—are not mere suggestions. The rules of procedure are commands which ensure fairness by their enforcement.

We recognize one result of reversal is to perpetuate an unstable custody relationship: all the more reason why it is important to adhere to the correct procedures and provide a fair hearing *in the first instance*. In the next instance, on remand, we are confident the trial court will impartially follow the procedures and rules governing family law matters to ensure a decision is reached after giving both sides an opportunity to be meaningfully heard.

Since we reverse on procedural grounds, we do not address Timothy's argument that the trial court failed to apply the correct legal standard, set forth in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 [12 Cal.Rptr.3d 356, 88 P.3d 81], in awarding Melinda sole custody with a move-away right.

## II.   FACTS AND PROCEEDINGS IN THE TRIAL COURT

The marriage of Timothy and Melinda was dissolved on May 20, 2003. The dissolution judgment awarded Timothy and Melinda joint legal and physical custody of their four children, Eric (born 1988), Adam (born 1989), Ian (born 1992), and Kaia (born 1994). The custody order awarded Timothy custody on those days on which Melinda was "on call" or available to work her job as a flight attendant for United Airlines. The order awarded Melinda custody the rest of the time.

Eric chose to live with Timothy in August 2003. In June 2004, Eric started living with Melinda.

On March 25, 2004, Timothy brought an order to show cause (March OSC) asking the court to award him sole physical custody of the four children and award Melinda reasonable visitation. In the March OSC, Timothy asserted the custody arrangement was "unworkable" and created "constant upheaval in the living situation for the children and myself." The hearing on Timothy's March OSC was set for May 12.

In the meantime, on April 27, 2004, Melinda brought an order to show cause (April OSC) seeking an order for an Evidence Code section 730 evaluation[2] of the children by Stephen D. Adam, Ph.D. Timothy's opposition to Melinda's April OSC stated: "[Melinda], who moved out of the residence at the time of separation, remarried over the weekend and envisions a bi-coastal living arrangement. New spouse lives on the east coast and [Melinda] lives in an apartment here."

At the hearing on May 12, 2004, the trial court expressed its belief an Evidence Code section 730 evaluation was unnecessary because "it's not a move-away case[,] . . . at least that's not the way it's presented." Melinda's counsel agreed a move-away issue was not before the court, but stated, "there are issues of moving away that will be addressed at the time of the hearing, in part, because of my client's recent remarriage." The court replied, "that's not something that we can foist upon each other by surprise—[¶] . . . [¶] . . . —If there is going to be a move away filed, then file it and we'll deal with that as a separate issue. But I'm not going to anticipate it at this point."

Thus, on May 12, 2004, the trial court denied, for the time being, Melinda's request for an Evidence Code section 730 evaluation. The court also appointed Boo Giuffre as the children's counsel to represent the children in the custody dispute. The court continued the two order to show cause (OSC) (Timothy's March OSC for custody modification and Melinda's April OSC for a section 730 evaluation) to July 18, 2004. The court ordered Timothy and Melinda to attend mediation.

---

[2] "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. [¶] The court may fix the compensation for these services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at the amount as seems reasonable to the court." (Evid. Code, § 730.)

On June 14, 2004, Timothy brought an ex parte application and OSC requesting an immediate temporary award giving him physical custody and prohibiting removal of the children from Southern California without the parties' written agreement or a court order. In a supporting declaration, Timothy stated the children "have lived under the hideous pressure of choosing which parent to live with." According to Timothy, Eric (who had been living with Timothy since August 2003) "[h]as developed an attitude that I cannot tell him what to do or where to go, or not go, or when to come home." The three other children were "more aligned with their Mother's behavior" and all four were "suffering the worst emotional burdens that can be associated with divorce and all that is going on in this family." Giving Timothy temporary sole custody would, he claimed, "assist us in providing stability and continuity in the lives of these children." Timothy asserted Melinda was manipulating the custody order, and "[t]he new spouse, new home, 3,000 mile move and all that go with it have been dangled in front of the children."

Melinda's opposition (handwritten by her attorney) asserted Timothy brought the ex parte application and OSC because he was "angry" and because he "disapprove[d] of" Melinda's remarriage.

When Timothy's ex parte application was heard on June 14, the trial court took the "unusual step," as the court described it, of placing the hearing on the record. The children's counsel stated she was "extremely concerned about these children's emotional well-being" and requested the court, on the children's behalf, to appoint Dr. Adam to conduct "a limited [Evidence Code section] 730" evaluation. The children's counsel explained that Melinda had remarried and "is now seeking to relocate with the minor children to the State of Virginia." The children's counsel stated, "I think that the involvement of the mental health professional is going to be very, very necessary in order to sort this issue out prior to the commencement of school." Melinda's counsel stated: "We are in the status quo. [Melinda] has no intention of moving or relocating to the State of Virginia, nor relocating the children's residence until after this matter has been heard in July."

The court appointed Dr. Adam to conduct "a limited [Evidence Code section] 730 evaluation." No definition of "limited" was provided. The court modified the custody schedule to provide equal visitation, from the time the children's school let out until the hearing on July 28, and to allow Melinda to take the children out of state until July 6. The parties later stipulated to continue the July 28 hearing to October 13, 2004.

Dr. Adam conducted his evaluation and, on September 28, 2004, met with the parties to discuss his recommendations and conclusions. He recommended: (1) the court consider allowing all of the children to relocate to Virginia to live with Melinda and her husband; (2) the children visit Timothy in California once a month; (3) Timothy be permitted to visit the children for a weekend or extended weekend in Virginia; (4) custody and visitation over holidays and school vacations be divided "in a reasonable and equitable manner"; (5) the children spend half of the summer with Timothy; and (6) "the parents facilitate any other reasonable personal or telephonic contact between the nonresidential parent and the children."

Dr. Adam stated in the report: "The above recommendations are rendered with the knowledge that there is data that cannot be known at this time. The living arrangements and family dynamics in Virginia must be tested. Although one cannot be certain, I believe that the likelihood for the children to adapt and flourish is probable. I do not believe that the mother will undermine, obstruct, or frustrate the children's relationship with the father. The children are of an age where they have each established a relationship with their father that will sustain despite the geographical distance. On the other hand, what is known is that the current shared custody plan has proven to be a failure. The children do not wish to reside primarily with their father. Based on the data, this evaluator cannot recommend that the children reside primarily with their father."

On September 29, 2004, Timothy filed a notice withdrawing the March OSC, which at that time was scheduled for hearing on October 13.

On October 5, 2004, Melinda brought an ex parte application to restore the custody case to calendar on October 13. She also filed on that date an OSC requesting modification of the custody order (October OSC) and brought an ex parte application to have the OSC heard on shortened notice. Melinda's October OSC was not personally served on Timothy. Melinda's October OSC stated as its factual support: "Petitioner has remarried. Petitioner will be living in the State of Virginia with the minor children. The children and the parties have been evaluated by Dr. Stephen D. Adam Ph.D. [¶] There is a need to modify the present child support order because the time that the children spend with each parent will change." The court granted the ex parte application for shortened notice, over Timothy's opposition, and set Melinda's October OSC for hearing on October 13, 2004.

Also on October 5, 2004, the children's counsel filed a statement of issues and contentions, concluding: (1) the existing custody order is not in the children's best interest; (2) Eric, Adam, and Ian had not performed "to their capacity in academics" during the previous year; (3) the three younger

children do not wish to disclose a preference regarding their primary residence; and (4) Eric, the oldest child, "may not be of sufficient maturity to make a statement of preference which is in his best interests based on the existing relationship he has with his mother and father." The statement disclosed that the children's counsel had several telephonic conferences and one personal meeting with Dr. Adam.

On October 6, 2004, Timothy brought an ex parte motion to quash service of Melinda's October OSC. The motion asserted the October OSC did not provide the 45-day notice required for a move-away hearing under Family Code section 3024. The attorney declaration submitted with the motion stated: "As of this writing, I have not received the [Evidence Code section] 730 report. I am not ready to proceed to trial on October 13th, and allowing the trial to commence on October 13 deprives my client, Mr. Seagondollar, of his constitutional right to due process." A hearing on Timothy's motion to quash was scheduled for November 22, 2004.

On October 8, 2004, Timothy sought a continuance of the hearing on Melinda's October OSC. The facts in support of the request were: "October 13, 2004 hearing is the first setting of Petitioner's OSC. Under Family Code Section 243(e) Respondent is entitled to one continuance. Under CCP Section 595.4 Respondent needs a continuance to procure a material witness. Respondent received the evaluator[']s record on October 5, 2004 at approximately [3:00 p.m.]. I cannot, with due diligence, procure competent rebuttal witness(s) and competently prepare for trial for what is the most important issue this family has ever faced. Please note[] the report was received less than 10 days prior to the October 13th hearing date." A hearing on Timothy's request for a continuance was scheduled for November 22, 2004, after the hearing on Melinda's October OSC.

Timothy filed a responsive declaration to Melinda's October OSC.

On October 13, the trial court continued the hearing on Melinda's October OSC to November 1, 2004, to accommodate Dr. Adam's schedule. The hearing was held on November 1, 4, 10, and 16, 2004. The minutes state that Timothy's two OSC's and Melinda's two OSC's were being heard, although Timothy had withdrawn the March OSC and his June OSC had sought only temporary relief. On November 1, the first day of the hearing, the trial court denied Timothy's request for a continuance. Dr. Adam testified.

On November 4, Timothy requested the court to schedule a day of the hearing to present Dr. Philip Stahl as a rebuttal witness to Dr. Adam. Timothy's counsel represented that Dr. Stahl would not be available to testify until November 19. Melinda's counsel and the children's counsel opposed the

request. Timothy's counsel made an offer of proof that Dr. Stahl would testify that Dr. Adam did not consider all relevant information and did not comply with California Rules of Court, rules 5.220 and 5.225, and that Dr. Stahl would tell the court "there are items and circumstances missing from that report that are essential for the court to be able to . . . make its decision."

On November 10, during cross-examination, the children's counsel questioned Timothy about Dr. Stahl. Timothy's counsel objected on the grounds of privilege and work product. The court stated, "if this is a potential witness here, his discussion privilege is gone." Timothy's counsel explained the court had previously stated that Dr. Stahl would not be permitted to testify if the hearing ended before he was available. The court then sustained the privilege objection, stating, "if no witness is here, they're not going to testify because I'm not extending this proceeding forever."

The hearing ended on November 16, 2004. Dr. Stahl had not testified.

The trial court granted Melinda primary custody of the children and permitted her to relocate with the children to Virginia, conditioned on various orders regarding Timothy's custody. A statement of decision was signed and filed on January 19, 2005. The court stated: "The Court is not making any presumptive-right-to-move decision. The Court is not making a decision on the basis of one party having to show detriment. In this case, the 'best interests' of the children, is the legal standard to be applied by the Court." The trial court found that Melinda has "a stronger emotional attachment" with the children and that they "look to her for their emotional strength." The court continued: "[Melinda] is the more open parent and it is easier for her to deal with the children's problems. The children are more closely bonded to [Melinda]. She provided the stability in the children's lives. [Melinda]'s strengths lie in the openness with which she reacts to the children and the children respond well to [Melinda]. [She] is the parent most [*sic*] likely to share the time with the children. [Melinda] was also the parent with whom the children would prefer to reside. [Timothy] is not as close with the children as [Melinda] and [Timothy] is not dealing with the children on the same level as [Melinda]." The court found that Melinda's move to Virginia was not done in bad faith.

The court concluded it was in the children's best interest to award Melinda primary physical custody and to authorize her to relocate to Virginia with the children. Findings and an order after hearing reflecting the trial court's decision were filed on January 19, 2005. Timothy timely appealed from the order.

III. Analysis

## A. *Statutory Framework*

█ In the recent case of *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955–956 [38 Cal.Rptr.3d 610, 127 P.3d 28], the California Supreme Court explained: "California's statutory scheme governing child custody and visitation determinations is set forth in the Family Code (all further statutory references are to this code unless otherwise indicated). Under this scheme, 'the overarching concern is the best interest of the child.' [Citation.] [¶] For purposes of an initial custody determination, section 3040, subdivision (b), affords the trial court and the family ' "the widest discretion to choose a parenting plan that is in the best interest of the child." ' [Citation.] When the parents are unable to agree on a custody arrangement, the court must determine the best interest of the child by setting the matter for an adversarial hearing and considering all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents. [Citations.] [¶]  █  Once the trial court has entered a final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining' that custody arrangement. [Citation.] In recognition of this policy concern, we have articulated a variation on the best interest standard, known as the changed circumstance rule, that the trial court must apply when a parent seeks modification of a final judicial custody determination. [Citations.] Under the changed circumstance rule, custody modification is appropriate only if the parent seeking modification demonstrates 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest. [Citation.] Not only does this serve to protect the weighty interest in stable custody arrangements, but it also fosters judicial economy. [Citation.] [¶] The Family Code contemplates that, in making a custody determination, consideration of the best interest of the child may lead the trial court to award custody either to both parents (joint or shared custody) or to only one parent (sole custody)." (Fn. omitted.)[3]

---

[3] In that case, the Supreme Court held that where sole legal and physical custody of a child has been awarded to one parent after a contested custody dispute, a noncustodial parent opposing the custodial parent's decision to relocate with the child is not entitled to an evidentiary hearing. (*In re Marriage of Brown & Yana, supra,* 37 Cal.4th at pp. 952, 955.) *In re Marriage of Brown & Yana* is not directly applicable here because Timothy and Melinda initially shared legal and physical custody of the children.

When one parent has sole custody, that parent "has a right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child." (Fam. Code, § 7501, subd. (a).) "In a 'move-away' case, a change of custody is not justified simply because the custodial parent has chosen, for any sound good faith reason, to reside in a different location, but only if, as a result of relocation with that parent, the child will suffer detriment rendering it ' "essential or expedient for the welfare of the child that there be a change." ' [Citation.]" (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 38.)

Here, Timothy and Melinda were given joint legal and physical custody of the children, and "[a] different analysis may be required when parents *share* joint physical custody of the minor children under an existing order and in fact, and one parent seeks to relocate with the minor children." (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 40, fn. 12.) "In such cases, if it is shown that the best interests of the children require modification or termination of the order, the court 'must determine de novo what arrangement for primary custody is in the best interest of the minor children.' " (*In re Marriage of LaMusga, supra,* 32 Cal.4th at p. 1089, fn. 3.)

> B. *The Trial Court's Procedural Errors Deprived Timothy of a Fair Hearing on Melinda's Request for Custody and to Relocate the Children to Virginia*

Timothy argues the trial court erred by (1) failing to require Melinda to file a responsive pleading to his March OSC or to file a counter-OSC requesting custody and a move-away; (2) granting Melinda's request to hear her October OSC on shortened notice without good cause; (3) refusing to hear Timothy's motion to quash before the hearing on Melinda's October OSC; (4) refusing to trail or continue the matter for three days to permit Timothy's rebuttal expert to testify; and (5) failing to issue an order defining in detail the purpose and scope of the Evidence Code section 730 evaluation. We agree: The trial court erred in all of those ways. While some error may be excused as harmless, the cumulative effect was to deny Timothy a fair hearing.

### 1. *Melinda's Failure to File a Response to Timothy's March OSC*

We start with Melinda's failure to file a responsive pleading seeking affirmative relief. A party served with an OSC re modification of custody may use a responsive declaration to seek affirmative relief on the same issues. (Fam. Code, § 213; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2005) ¶ 17:394, p. 17-96 (rev. #1, 2005).) Melinda did not file a response to Timothy's March OSC and did not request affirmative modification relief. Melinda did file an OSC requesting appointment of an evaluator, but she did not file her own OSC seeking modification of custody.

Indeed, as Timothy points out, at the hearing on May 12, 2004, the trial court expressed its belief an Evidence Code section 730 evaluation was unnecessary because "it's not a move-away case[,] . . . at least that's not the way it's presented." The trial court made clear Melinda would have to file her own OSC to present the move-away issue, and stated, "I'm not going to anticipate it at this point." At the June 14 hearing, Melinda's counsel had stated: "We are in the status quo. [Melinda] has no intention of moving or relocating to the State of Virginia, nor relocating the children's residence until after this matter has been heard in July." (The July hearing was later continued to October.)

Throughout the summer, while Dr. Adam conducted his evaluation, Melinda never sought affirmative relief and never filed a response to Timothy's March OSC.

Thus, as of September 28, 2004, only Timothy's March OSC requesting sole custody of the children was set for hearing. Because Melinda had requested no affirmative relief, the trial court could either grant Timothy's March OSC and give him sole custody, or deny Timothy's March OSC and keep the current joint custody order in place. A move-away with Melinda receiving sole custody was not an option.

On September 29, 2004, Timothy filed a notice withdrawing his March OSC, then scheduled for hearing on October 13. Timothy was within his rights to withdraw the OSC: Melinda had not filed a response, and trial had not commenced. (See Code Civ. Proc., § 581, subd. (c).) Melinda chose not to file a responsive declaration and did not request affirmative relief. The effect of withdrawing Timothy's March OSC was, therefore, to keep the current custody order in place.

2. *Lack of Good Cause to Hear Melinda's October OSC on Shortened Notice*

■ Melinda first sought affirmative relief asking for primary physical custody and a move-away with the children to Virginia when she filed the October OSC. A hearing date on an OSC re modifying custody "must be selected to comply with the CCP § 1005(b) minimum notice period . . . , absent an order shortening time." (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 17:367, p. 17-90.) An order shortening time may be requested when filing the OSC. "The request should be made on the appropriate application form . . . , setting forth *evidentiary facts* why a shorter notice period is necessary." (*Id.*, ¶ 5:349, p. 5-133; see Cal. Rules of Court, rule 317(b).)

Melinda applied ex parte for an order shortening time when she filed her October OSC seeking modification of custody. As evidence in support of her application, Melinda submitted the declaration of her attorney, who stated: (1) Timothy withdrew his March OSC set for hearing on October 13, 2004; (2) Dr. Adam had been appointed to conduct a limited Evidence Code section 730 evaluation and had completed that evaluation; and (3) "[i]t is necessary for the Court to issue a new custody order for the four minor children because [Melinda] has remarried and is moving, with the children, to the State of Virginia."

Those facts merely restate the basis for seeking the modification: They do not constitute good cause for shortening time to hear such an important matter as an OSC to modify custody and approve a move-away. Yet, the trial court granted Melinda's application and set the hearing on the October OSC for October 13, 2004, only eight days away. The trial court erred by so doing.

Melinda justifies the order shortening time by arguing Timothy had known since April 2004 she had remarried and intended to move to Virginia. In opposition to Melinda's April OSC for an Evidence Code section 730 evaluation, Timothy stated Melinda, having remarried, "envision[ed] a *bi-coastal* living arrangement" (italics added) and maintained an apartment in Orange County. Further, Melinda's decision to relocate to Virginia does not necessarily mean she also intended to seek primary physical custody of the children and move them with her. To the contrary, Melinda's conduct from April until filing her October OSC suggested she did not intend to seek primary custody. At the June 14 hearing, her counsel represented she had no intention of relocating until after the hearing on Timothy's March OSC. Timothy should not be charged with knowledge of a move-away request that Melinda did not make and commit herself to until filing her October OSC.

3. *Refusing to Hear Timothy's Motion to Quash Before the Hearing on Melinda's October OSC*

█ On October 13, the trial court continued the hearing on Melinda's October OSC to November 1, 2004, so the error in granting Melinda's ex parte application might be considered harmless.[4] But in addition, it appears

---

[4] Citing *In re Marriage of McGinnis, supra,* 7 Cal.App.4th at page 478, Timothy argues he should have been given 45 days' notice of the hearing on Melinda's October OSC. The *McGinnis* court required 45 days' notice of a move-away request based on former Civil Code section 4600.5, subdivision (m), under which "a noncustodial parent is, to the extent feasible, entitled to 45 days' notice where the custodial parent indicates that he or she plans to change the children's residence." (*In re Marriage of McGinnis, supra,* 7 Cal.App.4th at p. 478.) Timothy was a custodial parent and therefore would not have been entitled to 45 days' notice under former Civil Code section 4600.5, subdivision (m).

Melinda's October OSC was not properly served on Timothy. An OSC requesting modification of a custody order must be served on the party; service on the party's attorney is not sufficient. (Fam. Code, § 215; see Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 17:379, p. 17-93.) A postjudgment modification issued without proper service of the OSC is void on its face and subject to collateral attack. (*In re Marriage of Kreiss* (1990) 224 Cal.App.3d 1033, 1039–1040 [274 Cal.Rptr. 226].)

The record does not include a proof of service of Melinda's October OSC. Although Melinda's counsel did give notice to Timothy's counsel of the ex parte application to restore the matter to the October calendar, even if that could be construed as service of the OSC, it was not made on Timothy personally.[5]

On October 6, 2004, Timothy moved to quash service of Melinda's October OSC and requested the court to hear his motion on shortened notice. Even though the trial court *granted* Melinda's request to have her OSC heard on shortened notice, the court *denied* Timothy's request for shortened notice on his motion to quash. As a result, Timothy's motion to quash was set for hearing on November 22, 2004, *over one month after* the initial hearing date of October 13 on Melinda's October OSC, and after the hearing on the OSC actually took place. That was an abuse of discretion. Based on the record before us, the trial court would have been required to grant Timothy's motion to quash had the court heard the motion before the hearing date on Melinda's October OSC. Had that occurred, it is possible the hearing on Melinda's October OSC would have been held at a time when Timothy's rebuttal expert would have been able to testify, and the result would be different.

4. *Refusal to Continue Hearing to Permit Timothy's Expert to Testify*

We might also deem the improper service to be harmless error (or waived by Timothy's appearance on October 13 and November 1 (see *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697 [91 Cal.Rptr.2d 844])) were it not for the fact

---

[5] Actual notice excusing compliance with Family Code section 215 might suffice if the opposing party knew of the date, time, and place of the hearing sufficiently in advance to appear or otherwise protect his or her rights. (*Gortner v. Gortner* (1976) 60 Cal.App.3d 996, 1001 [131 Cal.Rptr. 919]; see Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 17:380, p. 17-93.)

Some cases have expressed reservations, as do we, about an actual notice exception. (*In re Marriage of Roden* (1987) 193 Cal.App.3d 939, 944 [238 Cal.Rptr. 687]; *In re Marriage of Kreiss, supra*, 224 Cal.App.3d at pp. 1038–1039.) If the Legislature had intended to permit service by actual notice of postjudgment modification requests, it could have drafted Family Code section 215 to so permit. But the Legislature enacted section 215 as requiring service "in the same manner as the notice is otherwise permitted by law to be served . . . upon the party."

the trial court would not continue the hearing a mere three days to permit Timothy to present his rebuttal expert witness. In the brief time between Melinda's filing the October OSC and the hearing, Timothy retained Dr. Stahl as a rebuttal witness to Dr. Adam. As Timothy explains, on October 13, 2004, the trial court reset the hearing on Melinda's October OSC in deference to Dr. Adam's schedule. We do not understand why the trial court did not similarly accommodate Dr. Stahl by permitting a three-day continuance.

It is clear the trial court was annoyed with Timothy and believed he was abusing the system. "I would like more time," Timothy's counsel asked at the October 13, 2004 hearing. "I know you would, but you're not going to get it," the court replied. While denying Timothy's request for more time to prepare to respond to Melinda's October OSC—filed only eight days earlier—the trial court continued the hearing to accommodate Dr. Adam's calendar. The trial court stated, "I intend to give everyone a fair shot at this. Although, I can see that [Timothy's counsel] is taking advantage of all of the legal nuances that he's entitled to as an attorney."

What nuances? Withdrawing the March OSC, which he had a right to do? Objecting to an unbridled Evidence Code section 730 evaluation that addressed issues not before the court? Seeking the statutorily granted 15-day minimum time to oppose Melinda's October OSC? Moving to quash an improperly served OSC? Asking the court for a short continuance to accommodate Timothy's rebuttal expert's schedule after the court had accommodated Melinda's expert witness? Timothy might not be blameless, but the trial court should have borne in mind that Melinda did not request affirmative relief and did not seek primary physical custody with a move-away until *after* Dr. Adam's favorable report was released, and despite the trial court's prior admonition that this was not a move-away case and Melinda would have to bring her own move-away OSC.

As explained *ante*, Timothy's counsel made an offer of proof that Dr. Stahl would testify Dr. Adam did not consider all relevant information and did not comply with California Rules of Court, rules 5.220 and 5.225. According to Timothy's counsel, Dr. Stahl would tell the court "there are items and circumstances missing from that report that are essential for the court to be able to . . . make its decision." (Dr. Stahl apparently is an experienced child custody evaluator; he prepared the evaluations relied upon by the superior court in *In re Marriage of LaMusga, supra,* 32 Cal.4th 1072.) Had the trial court granted a brief continuance to permit Dr. Stahl to testify, the outcome might have been different. The error in refusing Timothy's request for a brief continuance was prejudicial and compels reversal of the move-away order.

### 5. *Inadequate Order Defining Purpose and Scope of Evidence Code Section 730 Evaluation*

The trial court's failure to continue the hearing to permit Timothy to present his expert witness becomes more striking when considered in light of the errors committed in appointing Dr. Adam to conduct an Evidence Code section 730 evaluation. Timothy argues a "detailed order" defining the purpose and scope of the evaluation was not in place before Dr. Adam performed his evaluation. California Rules of Court, rule 5.220(d)(1)(B) states each court must "[g]ive the evaluator, before the evaluation begins, a copy of the court order that specifies: [¶] (i) The appointment of the evaluator under Evidence Code section 730, Family Code, Family Code section 3110, or Code of Civil Procedure 2032; and [¶] (ii) The purpose and scope of the evaluation." The minute order in this case stated, "[t]he court appointed Dr. Stephen Adams [*sic*] to conduct a limited [Evidence Code section] 730 evaluation. The cost of the evaluation shall be divided equally between the parties, subject to reallocation." That's it. The order specifies the evaluator's appointment, but fails to specify the purpose and scope of the evaluation.

In response, Melinda argues: "The facts actually support a clearly defined purpose and scope that was known to counsel, to Dr. Adam, and to both parties. Dr. Adam's November 1, 2004 testimony described the purpose and scope of the evaluation, *as he understood it*. His testimony also provided that at the time of his first meeting, both Melinda and Timothy were advised of the purpose and scope and the process that he would use in his evaluation." (Italics added.) In other words, Melinda all but concedes the scope of the evaluation was based on Dr. Adam's interpretation of the unspecific order issued by the trial court—an order issued when the trial court acknowledged this was not a move-away case.

Defining the purpose and scope of Dr. Adam's evaluation was more than an academic exercise. When Dr. Adam was appointed, Melinda's move-away request was not in issue: She had not requested a modification of custody by responsive pleading or her own OSC. Her counsel had represented that Melinda did not intend to relocate until after the hearing on Timothy's March OSC (then set for July). The trial court had stated this was not a move-away case. Yet, Dr. Adam evaluated the issue of Melinda moving to Virginia with the children and concluded she should be given primary custody.

We need not decide the level of detail with which an order appointing an Evidence Code section 730 evaluator in a family law matter should define the purpose and scope of the evaluation. In this case, the order was woefully inadequate because it failed to define the purpose and scope of the evaluation *at all*. Compounding the problem here was that the trial court ordered an

Evidence Code section 730 evaluation before Melinda had filed a response to the March OSC. Because the order appointing the evaluator was made before Melinda had filed a response framing the issues for trial, the order gave the evaluator carte blanche to define those issues, as well as the purpose and scope of the evaluation. That result demonstrates why, in family law matters such as this, a child custody evaluator usually should not be appointed until a responsive declaration or pleading is filed.

As Timothy points out, Dr. Adam had an opportunity to correct the trial court's error by supplying the parties with a written protocol describing the purpose of the evaluation and explaining the procedures he intended to follow, as required by California Rules of Court, rule 5.220(e)(1)(A). Dr. Adam did not prepare such a written protocol. He could not satisfy his obligation to supply a *written* protocol by discussing the evaluation orally with the parties at his initial meeting with them.

We are also concerned that the children's counsel engaged in ex parte communications with Dr. Adam, including several telephonic conferences and a personal meeting. The Superior Court of Orange County, Local Rules, rule 716(F) prohibits such ex parte communications: "Unless there is a stipulation, ex parte communications by counsel with the evaluator are prohibited, except to schedule appointments. An attorney for a party, or minor's counsel, must not provide the evaluator with documents pertaining to the case without first providing the other side, and minor's counsel, if any, with a copy of the documents."

The Superior Court of Orange County, Local Rules, rule 716(F) is unambiguous. It advances the sound policies of protecting the evaluator from unilateral influence and preserving the evaluator's neutrality. Those policies now are also advanced by Family Code section 216, enacted in 2005, which similarly prohibits, absent stipulation, ex parte communications between the attorneys for any party, including court-appointed minor's counsel, and any court-appointed evaluator, except for scheduling of appointments and as provided in subdivision (b) of section 216. (Fam. Code, § 216, subds. (a) & (b).)[6] We expect these prohibitions against ex parte communications with court-appointed evaluators to be obeyed.

---

[6] Although Family Code section 216 apparently was not in effect when the ex parte communications took place here (29C West's Ann. Fam. Code (2006 supp.) p. 2), it reflects the Legislature's concern over ex parte communications between counsel and court-appointed evaluators.

## DISPOSITION

The postjudgment custody modification order entered on January 19, 2005, is reversed and the matter remanded for proceedings consistent with this opinion. Appellant to recover costs incurred in this appeal.

Sills, P. J., and Aronson, J., concurred.