Filed 11/25/14  Z.A. v. Super. Ct. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Z.A.,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>        Respondent;<br><br>M.B.A.,<br><br>        Real Party in Interest. | G050820<br><br>(Super. Ct. No. 10D009899)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, David L. Belz, Judge.  Petition granted.

William J. Kopeny & Associates and William J. Kopeny for Petitioner.

No appearance for Respondent.

Mauriello Law Firm and Thomas D. Mauriello for Real Party in Interest.

\*        \*        \*

THE COURT:*

We issue a peremptory writ because respondent court erroneously determined that a family law court order, based upon a poorly drafted and contradictory stipulation, amounted to a final judicial custody determination, thereby giving real party a presumptive right to move away with the minor child from California to Texas.

Because there is yet no final judicial custody determination, respondent court should hold a new hearing in which both parties have the opportunity to be meaningfully heard and to present evidence bearing on the "best interest" of the minor child based on all the circumstances.

I

Petitioner Z.A. (Father) and real party M.B.A. (Mother) were married in 1992 and separated in 2010. They had three children, an adult daughter, a teenage son (nearly 18), and a daughter S.A. (Daughter), born in June 2007.

In November 2012, Mother moved to Texas "for employment opportunities and to take care of my mother." Father remained at the family home in Irvine, California with the three children, including Daughter. According to Father, "I took on the role as the primary parent in all our children's lives."

Father and Mother finalized their divorce in March 2013 by agreeing to a stipulation for judgment. Mother was represented by counsel, but Father was in propria persona. The parties signed a document entitled "Stipulation for Judgment," with the name, address and telephone number of Mother's counsel listed on the heading of the document. The stipulation for judgment was signed by the family law judge (Judge Clay M. Smith) and filed with the court.

The stipulated judgment, in section 9(a), provides that "[b]oth parties shall have joint legal custody of the minor children and shall share the right and responsibility

---

* Before O'Leary, P. J., Bedsworth, J., and Thompson, J.

2

to make decisions relating to the health, education and welfare of the minor children." The stipulated judgment, in section 9(b), further provides that "[b]oth parents shall have joint physical custody of the minor children," with California as the home state "for all purposes."

The stipulated judgment, however, has an unusual provision regarding Daughter, which is included under the heading, "Both Parties' Share Time Schedule." Section 9(c)(1) provides, in pertinent part:

"When [Daughter] reaches the age of seven (7) years, if Mother is still residing in Texas, [Daughter] shall then relocate with Mother to Texas and shall live with Mother there, or any other location Mother should be living at. Mother shall then have primary physical custody of [Daughter]. However, [Daughter] shall have the ability to give her input as to where she wants to reside. Both parties shall take that into consideration when that time comes. [¶] . . . . If the parties are unable to agree to [Daughter] moving to Texas, the parties shall agree then to seeking the services of a private mediator (e.g. Judicate West or JAMS) or alternatively the parties may schedule a mediation appointment at the family law mediation services provided by the Orange County Superior Court . . . ."

In June 2014, Daughter turned seven years old. Until that time, Daughter had been living in California in petitioner's home with Daughter's siblings and going to school in California.

In August 2014, Mother filed an ex parte application for an emergency order that Daughter be returned to her in Texas pursuant to the stipulated judgment.

Father (who had since retained an attorney) filed his own motion to modify the stipulated judgment to permit Daughter to remain enrolled at her current school in Irvine, where she was due to enter the second grade. Father's motion was set for a hearing on September 8, 2014, but respondent court advanced the hearing on the motion

3

to August 28, 2014, the day after Father's trial counsel returned from a long-scheduled vacation.

At the hearing, respondent court directly questioned Father and Mother, and read their declarations. There was no opportunity for counsel to conduct direct or cross-examination, or to call independent witnesses. Ruling from the bench, respondent court determined the stipulated judgment "unambiguously" stated that Daughter "shall" live with Mother in Texas once Daughter reached the age of seven. "[T]he language in paragraph 1 [of section 9(c)] is unambiguous. It says 'shall.' It's very clear that that's what the order was." Based on this language, respondent court held the stipulated judgment shifted the burden of proof to petitioner to prove that the move was not in Daughter's best interests, but Father failed to meet this burden of proof. "I don't see any material change of circumstances that's been pled in the response or in the request. I don't see it." "[T]he burden shifts back over to him. It shifted back to him on the best interest . . ."

On September 15, 2014, respondent court issued its formal findings and order, reiterating its finding "that the judgment language indicating that [Daughter] shall be moving to Texas shifted the burden of proof in this case from [Mother] to [Father]." Respondent court disregarded the other provisions in the stipulated judgment as "inconsistent with the clear language [in section 9(c)(1)] contemplating the move to Texas."

Father's writ petition prays that we direct respondent court to conduct a new custody trial. Father further requests that we order an evidentiary hearing before a different judicial officer, at which hearing Father would have the right to present his own direct testimony, cross-examine Mother and present testimony through other witnesses, including Daughter's older siblings, and utilize an Evidence Code section 730 child custody evaluator.

4

We issued a *Palma* notice where we temporarily stayed the move-away order, and requested opposition from Mother, asking her also to address the advisability of issuance of a peremptory writ in the first instance. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 179 (*Palma*).) Mother filed a timely opposition.

II

The judicial standards for move-away cases largely depend upon whether there has been a final judicial custody determination awarding one parent physical custody of the child. Where there has been a final custody determination awarding one parent legal and physical custody of a child, the family court already has made a judicial determination regarding the child's best interests. As a result, the custodial parent has a presumptive right to change the child's residence, even to another state, and need not show any necessity for the move. (Fam. Code, § 7501, subd. (a); *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256 (*Montenegro*).) Instead, the burden of proof rests upon the noncustodial parent to establish that "the proposed relocation of the children's residence would cause detriment to the children, requiring a reevaluation of the children's custody." (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1078.)

On the other hand, if there is not a final judicial custody determination, or if the custody order calls for the parents to share joint physical custody, the trial court should make findings concerning custody based on the "best interests" of the child. (Fam. Code, § 3040.) Absent an existing judicial custody determination, the rebuttable presumption in favor of the custodial parent does not apply. (*F.T. v. L.J.* (2011) 194 Cal.App. 4th 1, 19.)

Here, Mother contends the stipulated judgment constitutes the final judicial custody determination, thereby triggering her presumptive right to change Daughter's residence from California to Texas because section 9(c)(1) of the stipulated judgment provides that Daughter, upon reaching the age of 7, "*shall* then relocate with Mother to Texas and *shall* live with Mother there, or any other location Mother should be living at.

5

Mother *shall* then have primary physical custody of [Daughter]." (Italics added.) Mother calls the move-away provision "unambiguous" and "mandatory."

In order for a stipulated judgment to be interpreted as a final judicial custody determination for purposes of the changed circumstance rule, California law requires a "clear, affirmative indication the parties intended such a result." (*Montenegro*, *supra*, 26 Cal.4th at p. 258.) In *Montenegro,* the California Supreme Court reversed the Court of Appeal's determination that a stipulated judgment giving a mother primary physical custody over the couple's son was a final judgment as to custody even though it did not provide for any further judicial review, and even though it was captioned "for judgment," and boxes labeled "pendente lite" and "temporary order pending the trial of this action or further order of the Court" were not checked.

The *Montenegro* court emphasized the need for care in construing stipulated judgments. "Because many parties would not enter into a stipulated custody order if a court might later treat that order as a final judicial custody determination, we must be careful in construing such orders. Otherwise, we may discourage these parties from entering into such stipulations." (*Montenegro, supra,* 26 Cal.4th at p. 258.) The fact that the order included detailed visitation schedules and other provisions regarding custody, and did not provide for further hearings on those issues, is not a sufficient basis to conclude the parties intended the order to be the final judicial determination. (*Id.* at p. 259.)

*Montenegro* further recognized "the reality that many family court litigants do not have attorneys and may not be fully aware of the legal ramifications of their stipulations," which routinely are "rubber stamped" by family law judges. (*Id.* at p. 258.) Here too, the stipulated judgment was drafted by Mother's then counsel at a time when Father was unrepresented.

In like fashion, in *F.T. v. L.J., supra,* 194 Cal.App. 4th 1, the appellate court determined that the parties' stipulated judgment, incorporated by court order, did

not meet the *Montenegro* requirements for a final judicial custody determination. The *F.T.* court reached this conclusion because the parties' stipulation ambiguously recited that it should be adopted as a court order "without prejudice to either party." (*Id.* at p. 19.) As a result, the appellate court could not say that the custody order was a final judicial custody determination.

Here, as in *Montenegro* and *F.T.,* the stipulated judgment does not contain a clear, affirmative indication that the parties intended it to be a final judicial custody determination. To the contrary, it is replete with ambiguities, and even respondent court characterized it at the hearing as a "badly written judgment." While the stipulated judgment professes in section 7 ("Purpose of Stipulated Judgment") to make "a final and complete settlement and adjudication of all rights and obligations between the parties," it qualifies this assertion with the proviso "[e]xcept as otherwise provided in this Stipulated Judgment."[1]

The stipulated judgment begins in section 9(a) and section 9(b) by providing that both parents shall have joint physical and legal custody of the minor children, with California as the home state "for all purposes."

And while a provision in section 9(c)(1) appears to give Mother the unilateral custodial right to move away with the seven-year-old Daughter, the sentences which immediately follow qualify and contradict this. Why, if Mother has the unilateral right to make custodial decisions, does section 9(c)(1)(A) talk about going to mediation "[i]f the parties are unable to agree"? And why does the stipulated judgment provide in section 9(c)(1) that "[*b*]*oth* parties" "shall" take Daughter's "input" "into consideration"

---

[1] Section 7 of the stipulated judgment provides, in full: "*Except as otherwise provided in this Stipulated Judgment,* its purpose is to make a final and complete settlement and adjudication of all rights and obligations between the parties, including all property rights, custody and visitation rights, and all rights and obligations concerning child and spousal support." (Italics added.)

7

about "where she wants to reside" when Daughter reaches the age of seven? (Italics added.)

Mother makes much of the inclusion in the stipulated judgment of a clause providing the agreement should be interpreted as if drafted by both parties. In section 17(b), the stipulated judgment recites that "[b]oth parties have thoroughly read each and every provision of this Stipulation and understand the terms and legal effects of same." Section 22(d) (the "Miscellaneous" section) further declares that "[n]either party or counsel shall be considered the drafter of this stipulated judgment. This stipulated judgment and all of its terms and conditions were the joint work product of Husband and Wife."

Given the cautionary note in *Montenegro* regarding the legal naiveté of unrepresented litigants, we are disinclined to give much weight to the above-quoted boilerplate in construing ambiguous provisions in an attorney-drafted agreement. "[T]he doctrine of *contra proferentum* (construing ambiguous agreements against the drafter) applies with even greater force when the person who prepared the writing is a lawyer." (*Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365, 1370; see also Civ. Code § 1654.) This requirement promotes clarity in stipulated judgments, and provides additional protection for the nondrafter by making the drafter spell out the parties' respective rights and duties. The doctrine would offer little protection if it can be wiped away by still more oblique boilerplate.

That section 17(b) and section 22(d) are mere boilerplate is bolstered by the fact that section 17(b) itself falsely recites that *both* sides were represented by counsel and took advantage of the opportunity to "thoroughly review" the terms, provisions and statements contained in the stipulated judgment.[2] This provision is so plainly at odds

---

[2] The relevant language in section 17(b) reads: "Both parties acknowledge that *their own respective counsel* has thoroughly read and reviewed the provisions *with their clients* and by each party's initials on each page and signatures below that each

8

with the acknowledged facts as to lead us to discount the related representations in the stipulated agreement regarding the parties' "joint work product."

Construing the stipulated judgment as a whole, we cannot conclude that it provided a clear and affirmative representation to the parties, particularly to the unrepresented Father, that Mother had a unilateral right to move-away to Texas with Daughter, and that this right amounted to a final judicial custody determination. We cannot ignore the impact upon a nondrafter like Father of the accompanying language calling for mediation if the parties are unable to agree, and about considering Daughter's "input." To do otherwise would provide powerful incentives to an attorney-drafter to strategically include imprecise and ambiguous provisions to trap an unrepresented spouse.

Where there has not been a final judicial determination as to custody, a request for a change in custody is to be determined pursuant to the "best interest" standard, with neither parent benefitting from a presumption of custody. (*Montenegro, supra,* 26 Cal.4th at p. 252; see also *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 34.) The child's welfare is paramount and the "overarching concern." (*Montenegro, supra,* 26 Cal.4th at p. 255.) "Bright line" rules are not necessarily appropriate; instead, "each case must be evaluated on its own unique facts." (*In re Marriage of LaMusga*, *supra,* 32 Cal. 4th at p. 1089.)

Because respondent court improperly construed Father to bear the burden of proof, we must remand to provide the court an opportunity to decide the motion under the proper standard. Where, as here, respondent court applied the wrong legal test, we cannot engage, as Mother urges, in a "highly deferential" standard of review. "[I]f a trial

understands and agrees to the aforementioned terms, provisions and statements made herein." (Italics added.) As we have noted, this representation is actually a misrepresentation; Father had no lawyer to read and explain the stipulated judgment to him.

9

court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law." (*F.T. v. L.J., supra,* 194 Cal.App.4th at p. 15.)

III

Father complains of the truncated and surreal nature of respondent court's hearing on Mother's move-away request, where the court restricted the parties' opportunity to call witnesses, present evidence and conduct questioning and cross-examination through counsel. (Even Mother's counsel concedes that the timing of the August 28, 2014 hearing was not "optimal" and "not ideal for [Father's] counsel under the circumstances . . . .")

Where no final judicial custody determination has been made, the family court must conduct a full evidentiary hearing in an adversarial proceeding before making an award under the "best interest" analysis. (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1053 (*Keith R.*).) Notwithstanding the heavy case load of dissolution matters, parents involved in such contested family court proceedings must have the opportunity "to present all relevant, competent evidence on material issues, ordinarily through the oral testimony of witnesses testifying in the presence of the trier of fact." (*Elkins v. Superior Court* (2007) 41 Cal. 4th 1337, 1345; see also Fam. Code § 217.)

This is particularly important in move-away cases, which are among the most serious decisions a family court is called upon to make. Because an out-of-state relocation will deprive one parent of the ability to have frequent and continuing conduct with the children, the competing claims must be considered calmly and dispassionately, and only after the parties have been afforded the opportunity to be "meaningfully heard." (*In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1119-1120 (*Seagondollar*).) In *Seagondollar,* we reversed a postjudgment move-away order because the family court had deprived the other parent of an opportunity to be "meaningfully

10

heard" by providing a "fair hearing *in the first instance.*" (*Id.* at p. 1120.)  The family court had shortened the time for the move-away hearing and deprived the other parent of his opportunity to present a rebuttal witness and to receive and evaluate the Evidence Code section 730 report.

Mother complains that Father "seeks an unwarranted 'do-over' of issues that were fully litigated and determined in 2013."  We disagree.  Based on its misapprehension of the stipulated judgment as a final judicial custody order, respondent court deprived both parties of a full evidentiary hearing on custody based on the "best interests" standard.  This includes adequate procedural safeguards such as notice, time for meaningful mediation, and, should mediation fail, a full evidentiary hearing.  We decline Father's request to exercise our discretion to order that a different bench officer conduct the proceedings upon remand.

An additional word on mediation.  The stipulated judgment calls for Mother and Father to seek the services of a private mediator or to take advantage of the court-provided family law mediation services "[i]f the parties are unable to agree to Daughter moving to Texas."  (Stipulated Judgment, § 9(c)(1)(A).)  (Indeed, as we discussed above, this provision is one of the reasons why we construe the stipulated judgment to be an interim, not a final custody determination).  This emphasis upon mediation dovetails with California statutory law and public policy for "resolving custody disputes *outside the courtroom* through parental stipulations, on the apparent belief that cooperation is more likely to produce a sound resolution than litigation." (*Montenegro, supra,* 26 Cal.4th at p. 257; see also Fam. Code §§ 3160-3164.)  We encourage the parties to work out their own arrangements to protect Daughter's best interests.

IV

A peremptory writ is proper to resolve "this purely legal dispute in an area where the issues of law are well-settled. . . .  There is a particular need to accelerate the writ process in child custody disputes where children grow up quickly and have

11

immediate needs." (*Keith R., supra*, at p. 1057; see also Code Civ. Proc., § 1088.) We have solicited, received and considered Mother's opposition on the merits of Father's writ petition and gave notice that if the circumstances so warranted, we might issue a peremptory writ in the first instance. (*Palma*, *supra*, 36 Cal.3d at p. 180.) Because respondent court deprived Father of the opportunity to be meaningfully heard on Mother's move-away request according to the correct legal standard, the matter requires accelerated review and decision. (Code Civ. Proc., § 1088; see *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1259-1260.)

Let a peremptory writ of mandate issue directing respondent court to vacate its order of September 15, 2014, and any subsequent orders or judgments based on it, granting Mother permission to move away to the state of Texas with the minor child. Respondent court shall conduct further evidentiary proceedings in the initial custody determination in accordance with this opinion. The temporary stay shall be lifted upon the finality of this opinion.

The parties shall bear their own costs in conjunction with this writ proceeding.