Filed 1/13/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA BARBARA COUNTY,<br><br>     Respondent;<br><br>LAVELL CALVIN WHITE,<br><br>     Real Party in Interest. | B334427<br>(Super. Ct. No. 1455141)<br>(Santa Barbara County) |

      This case concerns whether a jury's special circumstance finding has preclusive effect in Penal Code section 1172.6 resentencing proceedings.[1]  Based on a felony-murder theory, in 2018 a jury convicted Lavell Calvin White of first degree murder with a special circumstance finding that the murder had been committed during a robbery.  (§§ 187, subd. (a), 190.2, subd.

---

[1] All statutory references are to the Penal Code.

(a)(17)(A).)  The jury factually found that White had been a "major participant" in the underlying felony and had acted with "reckless indifference to human life."  The trial court sentenced him to life imprisonment without the possibility of parole (LWOP).  We affirmed the judgment in an unpublished decision. (*People v. White et al.* (Apr. 9, 2021, B293313), 2021 Cal.App. Unpub. LEXIS 2309, hereafter *White I*.)

White petitioned for resentencing pursuant to section 1172.6.  The trial court granted the petition, resulting in a drastic reduction of his sentence from LWOP for special circumstance murder to a two-year determinate term for attempted second degree robbery.

The trial court effectively overruled the jury's unanimous special circumstance finding that White had acted with reckless indifference to human life.  It also rejected this court's conclusion as stated in the opening paragraph of *White I*: "The key phrase in this appeal is 'reckless indifference to human life.' . . . [T]his is an appropriate description of appellant Lavell White's mental state during the attempted robbery and shooting death of Terrence Richardson."  (*White I*, *supra*, slip opn. at p. 1.)

The People seek a writ of mandate directing the trial court to (1) vacate its order redesignating White's murder conviction as attempted second degree robbery, and (2) reinstate the original murder conviction and LWOP sentence.

We grant the People's petition and vacate our previous stay order.  The trial court erroneously concluded that the jury's special circumstance finding had no preclusive effect because the jury had not been "properly instructed as to the *Banks/Clark* factors."  (*People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).)

2

*Facts*

The facts are set forth in detail in *White I*, *supra*, slip opn. at pp. 3-7. Briefly, they are as follows: White, Ali Abdul Mohammed, and G.O. conspired to commit an armed robbery of R.D., a "street" marijuana dealer. This was the plan: They would arrange to purchase marijuana from R.D. at a location in Santa Maria. When R.D. arrived in his car with the marijuana, Mohammed would enter the car with a handgun and "get the keys . . . so the dude can't peel off." White would stand outside the vehicle and would display a replica "AK-47 BB gun." Mohammed would take whatever property was available and then get out of the vehicle.

At about midnight, R.D. drove his car to the location where the purchase was supposed to occur. R.D.'s friend, Terence Richardson, was seated in the right front seat. Mohammed entered the car and sat in the middle of the back seat. R.D. showed him the marijuana. Mohammed "reach[ed] over," leading R.D. to believe that he "was grabbing to get the marijuana." Instead, Mohammed "took out [the] keys from the ignition, placed them . . . in the [center] console, . . . pulled out a gun and told [R.D.] to give him everything in the car."

R.D. "felt something touch the side of [his] head." He looked to his left through an open window and saw White "outside of the driver's side window holding what appeared to be an assault rifle." G.O. saw White standing "[r]ight outside the driver['s] door." White was pointing the replica AK-47 at the driver.

R.D. grabbed the car keys from the center console, started the engine, and drove away. Richardson "was turned around swinging, swinging on the guy with the gun, so [R.D.] also started

3

swinging on [him] telling him to get out."

R.D. "heard a loud shot or bang." Mohammed told him "to pull over." R.D. pulled over and Mohammed got out of the car without taking any of the victims' property.

Richardson told R.D. that he had been shot. The hollow-point bullet entered his torso, and he bled to death. After the shooting, Mohammed said "he had no choice, he had to [fire the handgun]."

*Section 1172.6*

Section 1172.6 was added to the Penal Code by Senate Bill No. 1437 and became effective on January 1, 2019. (Stats. 2018, ch. 1015, § 4.) As amended, section 1172.6, subdivision (a) provides in relevant part, "A person convicted of felony murder . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when" certain conditions apply. One of the conditions is that "[t]he petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a)(3).)

After a facially valid section 1172.6 petition is filed and "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).) If an order to show cause is issued, the court shall conduct an evidentiary hearing to determine the petitioner's eligibility for relief. (*Id.*, subd. (d)(1).) "At the hearing . . . the burden of proof shall be on the prosecution to prove, beyond a

4

reasonable doubt, that the petitioner is guilty of murder . . . ." (*Id*., subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid*.) Where, as here, the petitioner was convicted on a felony-murder theory, the court shall redesignate the murder conviction as "the underlying felony(ies) on which the . . . felony-murder conviction was *actually* based." (*People v. Patterson* (2024) 99 Cal.App.5th 1215, 1225.)

*The Banks/Clark Factors and Section 1172.6*

"Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247-248.) "In Senate Bill No. 1437 . . . , the Legislature significantly narrowed the scope of the felony-murder rule. [Pursuant to new section 1172.6,] [i]t also created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory but who could not have been convicted under the new law." (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).)

"[S]ection 189, as amended [by Senate Bill No. 1437], now limits liability under a felony-murder theory principally to 'actual killer[s]' (Pen. Code, § 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' (*id*., subd. (e)(2)). Defendants [such as White] who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major

5

participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2' — that is, the statute defining the felony-murder special circumstance. (*Id.*, § 189, subd. (e)(3).)" (*Strong*, *supra*, 13 Cal.5th at p. 708.)

"*Banks* and *Clark* both substantially clarified the law governing findings under Penal Code section 190.2, subdivision (d): *Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry." (*Strong*, *supra*, 13 Cal.5th at pp. 706-707.)

*Trial Court's Ruling on Section 1172.6 Petition*

White was convicted in 2018, almost two years after *Banks* and *Clark* had been decided. But the jury was not instructed on the *Banks/Clark* factors because "[t]he jury instruction on the special circumstance, CALCRIM No. 703, was not amended after *Banks* and *Clark* to require instruction on [these] factors . . . ." (*Strong*, *supra*, 13 Cal.5th at p. 719, fn. 4.) Defense counsel did not request that the trial court instruct the jury on these factors.

No new evidence was introduced at the evidentiary hearing conducted pursuant to section 1172.6, subdivision (d). In its "Order Granting Resentencing," the trial court stated: "Although this case was decided after *Banks* and *Clark*, the jury was not properly instructed as to the *Banks/Clark* factors. . . . This Court finds that relief is available because the jury did not use the *Clark* factors with respect to the reckless indifference to human life finding even though the Appellate Court [in *White I*] found that the trial evidence was sufficient to support the findings under *Banks* and *Clark*." The trial court concluded that, based

6

on the *Banks*/*Clark* factors, at the section 1172.6 evidentiary hearing the People had not carried their burden of proving beyond a reasonable doubt that White had "acted with reckless indifference to human life." It therefore vacated his murder conviction.

As we shall explain, the jury's true finding on the special circumstance allegation was not trumped by the trial judge's opinion that the People had failed to carry their burden of proof. The jury's finding was binding on the trial court.

*The People Did Not Forfeit Their Right to*
*Challenge White's Eligibility for Resentencing*

The People's present petition correctly alleges: "On December 2, 20[2]2, the People filed a petition for a writ of mandate asking this Court to direct the trial court to reverse its decision [issuing an] Order to Show Cause [pursuant to section 1172.6, subdivision (c)]. That writ petition was summarily denied on December 16, 2022, in case B324776." White contends that, because the People did not file "a petition for review of this Court's order, or renew[] their petition for a writ of mandate, in the California Supreme Court," they forfeited their claim that White had failed to make a prima facie case for relief because of the preclusive effect of the jury's verdict.

The People were under no obligation to seek review in the Supreme Court of this court's summary denial of their petition. Because the denial was summary, it had no binding effect upon the parties. "Summary denials do not constitute law of the case, and do not establish any legal precedents." (*Frisk v. Superior Court* (2011) 200 Cal.App.4th 402, 415.) "The denial without opinion of a petition for a writ of mandate or prohibition is not res judicata. [Citations.] Our summary denial of the previous writ

7

petition was not a decision on the merits." (*Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 640.)

*The Trial Court Erred in Not Giving Preclusive Effect
to the Jury's Finding of Reckless Indifference to Human Life*

"'In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel.' [Citation.] 'The doctrine of collateral estoppel, or issue preclusion . . . is grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." [Citation.] "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."'" (*People v. Curiel* (2023) 15 Cal.5th 433, 451 (*Curiel*).) "Senate Bill 1437 does not itself support an equitable exception to issue preclusion. To the contrary, issue preclusion will 'ordinarily' apply in such proceedings." (*Id.* at p. 460.)

"'As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided "only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding."'" (*Curiel*, *supra*, 15 Cal.5th at pp. 451-452.)

In *Strong*, *supra*, 13 Cal.5th at p. 710, our Supreme Court stated: "It is . . . undisputed that findings made after *Banks* and *Clark* ordinarily establish a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude the defendant from making a prima facie case for relief.  If a jury has determined beyond a reasonable doubt that a defendant was a major participant who acted with reckless indifference to human life, as those phrases are now understood and as the Legislature intended them to be understood when incorporating them into Penal Code section 189, then that defendant necessarily could still be convicted of murder under section 189 as amended."  Our Supreme Court further stated, "[E]very appellate court to consider the issue, and both parties here, agree that post-*Banks* and *Clark* findings ordinarily do foreclose section 1172.6 resentencing."  (*Id*. at p. 715.)

But, "[f]indings issued by a jury before *Banks* and *Clark* do not preclude a defendant from making out a prima facie case for relief under Senate Bill 1437.  This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*."  (*Strong*, *supra*, 13 Cal.5th at p. 710.)  "[U]nless a defendant was tried after *Clark* was decided, a reckless indifference to human life finding will not defeat an otherwise valid prima facie case."  (*Id*. at p. 721.)

White argues that the jury's post-*Clark* finding of reckless indifference to human life does not have a preclusive effect because "[a] jury that has not been instructed on the *Clark* factors and therefore has no awareness of their existence cannot be said to have considered those factors in any meaningful sense."  "[A]ny claim that those factors were considered by [White's] jury is simply untenable.  Indeed, there is no way the

9

jury could even have been aware of the *Clark* factors, since those factors were never mentioned at [White's] trial."

There is no authority requiring that a jury be instructed sua sponte on the various *Clark* factors. The *Clark* factors are as follows (italics and capitalization omitted): (1) Defendant's awareness that a firearm would be used in the robbery, whether the defendant used a firearm, and the number of firearms involved. (*Clark*, *supra*, 63 Cal.4th at p. 618.) (2) Defendant's "physical presence at the crime and opportunities to restrain the crime and/or aid the victim." (*Id*. at p. 619.) (3) The "duration of the felony." (*Id*. at p. 620.) (4) The "defendant's knowledge of factors bearing on a cohort's likelihood of killing." (*Id*. at p. 621.) (5) The "defendant's efforts to minimize the risks of the violence during the [commission of the] felony." (*Ibid*.) In *People v. Farfan* (2021) 71 Cal.App.5th 942, 956, the court held that a post-*Banks*/*Clark* "robbery-murder special circumstance finding constitutes a valid finding beyond a reasonable doubt that [a section 1172.6 petitioner] had the intent to kill or was a major participant in the robbery who acted with reckless [indifference to] human life, and that finding makes [the petitioner] ineligible for relief under section [1172.6] as a matter of law." The court noted, "Although appellant's jury was not instructed with the *Banks* and *Clark* factors, . . . 'our Supreme Court has not required that juries be instructed on the clarifications, and in the wake of *Banks* and *Clark*, no mandatory language or material changes were made to the CALCRIM special circumstance instructions.'" (*Id*. at p. 955.) *Farfan* was filed more than two years before the trial court granted White's petition. Because the facts here "are not fairly distinguishable from the facts of" *Farfan*, the trial court was not free to disregard the law declared

10

in *Farfan.  (People v. Triggs* (1973) 8 Cal.3d 884, 891, disapproved on another ground in *People v. Lilienthal* (1978) 22 Cal.3d 891, 897, fn. 4.)  "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction." (*Auto Equity v. Superior Court* (1962) 57 Cal.2d 450, 455.)  But we do not fault the trial court because the record shows that neither party cited *Farfan* during the section 1172.6 proceedings below.  We assume the court was unaware of this authority.  It did not mention *Farfan* in its 12-page "Order Granting Resentencing."

Although the jury was not informed of the *Banks*/*Clark* factors, *Banks* and *Clark* changed "the trial environment" (*Strong, supra,* 13 Cal.5th at p. 719), and defense counsel was free to take advantage of this change.  It is primarily because of the change in the trial environment that "[n]either [a] jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review . . . supplies a basis to reject an otherwise adequate prima facie showing [under section 1172.6, subdivision (c)] and deny issuance of an order to show cause."  (*Id.* at p. 720.) "[T]he arguments available to counsel changed significantly after [*Banks* and *Clark*] offered a range of guiding factors and made clear that simple participation in, e.g., a 'garden-variety armed robbery' was not sufficient, without more, to establish the truth of the felony-murder special circumstance.  [Citation.]  The newly articulated guiding factors might also have altered what evidence defense counsel would have sought to introduce.  And more broadly, the clarifications *Banks* and *Clark* offered about the height of the bar needed to prove a felony-murder special-circumstance finding might have fundamentally altered trial strategies . . . .  As for instructions, after *Banks* and *Clark*,

11

defense counsel could have asked that optional additional instruction on the *Banks* and *Clark* factors be given to guide the jury in its deliberations . . . ." (*Id.* at pp. 719-720.) Defense counsel here made no such request for additional instructions.

*White Forfeited Claim that Jury Was Not Properly Instructed on "Reckless Indifference to Human Life"*

During the section 1172.6 proceedings below, White argued: "At [his trial], outdated pre-*Banks/Clark* instructions were used. Consequently, [he] was denied a correct statement of the law on a critical trial issue." White's "remedy for any alleged instructional error that affected the verdict was his appeal from the judgment of conviction. His failure to raise the argument on direct appeal [in *White I*] forfeited that claim [citation], and the subsequent petition process created by the Legislature when it enacted Senate Bill No. 1437 did nothing to change the applicable law so as to resurrect an argument he had already abandoned." (*People v. Burns* (2023) 95 Cal.App.5th 862, 867-868; see also *id.* at p. 865 ["Section 1172.6 does not create a right to a second appeal"]; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [Section 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial court error"].)

In any event, the trial court did not incorrectly instruct the jury on the law. "Reckless indifference to human life 'requires the defendant be "*subjectively* aware that his or her participation in the felony involved a grave risk of death."'" (*Banks, supra,* 61 Cal.4th at p. 807.) The jury was correctly instructed, "A person acts with reckless indifference to human life when he knowingly engages in criminal activity that he knows involves a grave risk of death."

12

*Disposition*

Let a peremptory writ of mandate issue directing the trial court to (1) vacate its order redesignating White's murder conviction as attempted second degree robbery, (2) reinstate the original murder conviction, the special circumstance finding, and the LWOP sentence. Our temporary stay order filed on January 17, 2024, is vacated.

CERTIFIED FOR PUBLICATION.


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

13

Pauline Maxwell, Judge

Superior Court County of Santa Barbara

_____

John T. Savrnoch, District Attorney, Marguerite Clipper Charles, Snr. Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Jonathan E. Demson, under appointment by the Court of Appeal, for Real Party in Interest.